No. 99-226

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 90N

STATE OF MONTANA,

Plaintiff and Respondent,

v.

RANDALL BOYD TAYLOR,

Defendant and Appellant.

APPEAL FROM: District Court of the Thirteenth Judicial District,

In and for the County of Yellowstone,

The Honorable Maurice R. Colberg, Jr., Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Randall Taylor, *Pro Se*, Sidney, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General; John Paulson,

Assistant Attorney General; Helena, Montana

Dennis Paxinos, Yellowstone County Attorney, Billings, Montana

Submitted on Briefs: January 27, 2000

Decided: April 11, 2000

Filed:

_____

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number, and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2 Randall Taylor (Taylor) appeals from the Judgment and Commitment entered by the Thirteenth Judicial District Court, Yellowstone County, on his guilty pleas to the criminal offenses of felony assault on a peace officer or judicial officer, misdemeanor assault and driving under the influence of alcohol (DUI), and from certain underlying orders. We affirm.

¶3 Taylor raises the following issues on appeal:

¶4 1. Did the District Court abuse its discretion by denying Taylor's motion to withdraw his guilty pleas?

¶5 2. Did the District Court err in denying Taylor's motion to dismiss Count I of the Information and in granting leave to amend Count I of the Information?

¶6 3. Did the District Court err in requiring Taylor to register as a violent offender and submit to DNA testing when it had not notified him of those consequences before he changed his plea or at sentencing?

¶7 4. Was Taylor denied effective assistance of counsel?

BACKGROUND

¶8 On November 1, 1997, law enforcement officers stopped Taylor's vehicle--and subsequently arrested him for DUI--at a convenience store in Laurel, Montana. According to the charging documents, Taylor was hostile to the officers during the stop and spit in the face of Officer Jeff Fowler (Fowler) after being placed in a patrol car. During processing on the DUI charge, Taylor repeatedly stood after being told to remain seated and, when Fowler pointed his finger at Taylor to emphasize his directive that Taylor remain seated, Taylor bit Fowler's finger and would not release the finger until Fowler struck him.

¶9 On November 5, 1997, the State of Montana (State) filed an Information charging Taylor with felony assault in violation of § 45-5-202(2)(c), MCA (1995), relating to the bodily injury caused to Fowler by Taylor biting his finger; misdemeanor assault in violation of § 45-5-201(1)(c), MCA, relating to Taylor making physical contact of an insulting nature by spitting in Fowler's face; and DUI in violation of § 61-8-401, MCA. After counsel was appointed to represent him, Taylor pleaded not guilty to the charges and was released on bail. The District Court set trial for April 6, 1998.

¶10 On April 2, 1998, the State moved to amend Count I of the Information by changing the felony assault charge to a charge of felony assault on a peace officer or judicial officer in violation of § 45-5-210(1)(a), MCA. Prior to a ruling on the motion to amend, Taylor moved the court to dismiss the felony assault as originally charged and to deny any effort to amend as untimely and prejudicial. The District Court informally vacated the trial date and the State responded to Taylor's motion on April 6, 1998. The court subsequently denied Taylor's motion to dismiss and granted the State's motion to amend.

¶11 On April 17, 1998, the State filed the Amended Information. On the same date, Taylor filed an Acknowledgement of Waiver of Rights by Alford Plea which was dated and signed by Taylor on April 4, 1998. Taylor ultimately entered a guilty plea to the DUI charge and Alford guilty pleas to the assault charges as amended, reserving the right to appeal from the denial of his motion to dismiss.

¶12 Sentencing was continued several times and finally set for October 2, 1998. Several days prior to that date, Taylor filed a *pro se* motion to withdraw his guilty pleas and for appointment of "Effective Competent Councel [sic]." The District Court continued the sentencing hearing and appointed new counsel to represent Taylor at a hearing on the motion to withdraw. After the hearing on that motion, the District Court issued findings, conclusions and an order denying Taylor's motion to withdraw his guilty pleas.

¶13 After the sentencing hearing was held on April 9, 1999, the District Court filed its Judgment and Commitment. The court also granted Taylor's motion to stay execution of the sentence pending appeal.

## DISCUSSION

¶14 1. Did the District Court abuse its discretion by denying Taylor's motion to withdraw his guilty pleas?

¶15 A district court may permit a plea of guilty to be withdrawn at any time before or after judgment if

the defendant shows good cause to do so. Section 46-16-105(2), MCA. We review a court's decision on a motion to withdraw to determine whether the court abused its discretion. *State v. Bowley* (1997), 282 Mont. 298, 304, 938 P.2d 592, 595 (citation omitted). In doing so, we consider three factors: 1) the adequacy of the interrogation at the time the plea was entered regarding the defendant's understanding of the consequences of the plea; 2) whether the plea was the result of a plea bargain in which the plea was given in exchange for dismissal of a charge; and 3) the promptness with which the defendant attempted to withdraw the plea. *State v. Keys*, 1999 MT 10, ¶ 11, 293 Mont. 81, ¶ 11, 973 P.2d 812, ¶ 11 (citation omitted).

¶16 Taylor contends his pleas were not voluntarily or intelligently made because there was much confusion over the "Alford" pleas and he did not understand the significance of such pleas. He further argues no charge was dismissed in exchange for the pleas and his request to withdraw the pleas was sufficiently prompt. We address his contentions in turn.

¶17 With regard to the alleged confusion over the Alford pleas, it is true that the District Court expressed some dissatisfaction and discomfort with Alford pleas early in the change of plea hearing. After a short recess, however, the court engaged Taylor in a colloquy regarding the nature of Alford pleas, the charges against him and the maximum possible penalties on the assault charges. The court also enumerated the constitutional rights Taylor would give up on changing his pleas. After each advisement, the District Court inquired whether Taylor understood and he responded in the affirmative. Thereafter, Taylor entered his guilty plea to the DUI offense, admitting to the elements of the offense, and the court moved on to the assault charges.

¶18 With regard to the assault offenses, the State explained the case it would present should the case go to trial. Taylor's counsel confirmed she had discussed the evidence with Taylor and advised him a strong likelihood existed that he would be convicted and it was in his best interest to enter the Alford pleas in exchange for the State's agreement to recommend no sentence greater than that made in the presentence investigation report and to apply the statutory exception to the mandatory minimum sentence. The court then asked whether that also was Taylor's understanding and he answered in the affirmative. Taylor also answered in the affirmative in response to the court's query about his belief it would be better to enter the Alford pleas than to proceed to trial. Taylor then entered his Alford pleas.

¶19 Finally, at the end of the colloquy, Taylor stated he was satisfied with the services and advice of his attorney, was not under the influence of drugs, alcohol or medication

and there was no mental or emotional reason he could not enter the pleas. The District Court then accepted Taylor's pleas. On this record, the court's interrogation of Taylor was sufficient to establish his understanding of the pleas and the consequences thereof.

¶20 Taylor points to his testimony at the hearing on his motion to withdraw as establishing that he did not understand the pleas and their consequences at the time he changed his pleas. The District Court considered this argument in ruling on Taylor's motion to withdraw and found that the explanations and advice Taylor was given at the time indicated his pleas were voluntary, knowing and an intelligent choice among alternative courses of action available to him. The record of the change of plea hearing supports the court's finding. Moreover, whatever Taylor's understanding may have been at some point after the Alford pleas were entered, the issue is whether he understood the consequences of the pleas at the time he entered them. *See Keys*, ¶ 14.

¶21 With regard to the existence of a plea bargain agreement, Taylor urges this factor weighs in his favor because no charge was dismissed in exchange for his Alford pleas. It is true that no charge was dismissed as part of the plea agreement between Taylor and the State. It also is true, however, that there was other consideration for the agreement and other benefit to Taylor, namely, the State's agreement to recommend whatever sentence was contained in the presentence investigation report and to apply the statutory exception to the mandatory minimum sentence for the felony assault charge. Taylor does not argue, and the record would not support, any breach of this agreement by the State. Thus, the State and Taylor both received the benefits and detriments for which they bargained in the plea agreement. This is all the law requires. *See Keys,* ¶¶ 18-19.

¶22 With regard to whether Taylor's motion to withdraw the Alford pleas--filed more than five months after he entered the pleas, but prior to the sentencing hearing--was timely, Taylor contends the District Court erred in concluding it was not. We have not established a "bright line" test for determining the timeliness of a motion to withdraw; the motion must be made within a reasonable time and each case turns on its unique facts. *State v. Enoch* (1994), 269 Mont. 8, 12, 887 P.2d 175, 178. Even assuming *arguendo* that Taylor's motion to withdraw was timely, however, promptness alone is not dispositive where, as here, the other two factors weigh in favor of the District Court's decision to deny the motion. *See State v. Schaff,* 1998 MT 104, ¶ 32, 288 Mont. 421, ¶ 32, 958 P.2d 682,¶ 32.

¶23 On this record, we conclude that the District Court did not abuse its discretion in denying Taylor's motion to withdraw his pleas.

¶24 2. Did the District Court err in denying Taylor's motion to dismiss Count I of the Information and in granting leave to amend Count I of the Information?

¶25 As set forth above, Taylor originally was charged in Count I of the Information with felony assault, in violation of § 45-5-202(2)(c), MCA (1995). The charge was premised on allegations that, at or near Laurel, Montana, on November 1, 1997, Taylor "purposely or knowingly caused bodily injury to a peace officer, to wit: Defendant bit a peace officer's finger and refused to release the finger from his mouth until struck by the peace officer . . . ." On April 2, 1998, four days prior to the scheduled trial, the State moved to amend the Information as to Count I, by denominating the offense as assault on a peace officer or judicial officer, in violation of § 45-5-210(1)(a), MCA. The underlying allegations remained the same.

¶26 Taylor responded to the State's motion the following day by moving to dismiss original Count I as insufficient to establish probable cause that Taylor committed the offense denominated therein as felony assault pursuant to § 45-5-202(2)(c), MCA (1995). He contended that no subsection (2)(c) existed in the 1997 version of § 45-5-202, MCA, and that both of the 1997 subsections of that statute involved an assault involving a weapon. Accordingly, Taylor argued that, because no weapon was alleged and the State could not prove a weapon-related assault by Taylor, he was entitled to dismissal of Count I. He also contended that the State's proposed amendment to Count I was an amendment of substance which was prohibited within 5 days of trial pursuant to § 46-11-205, MCA.

¶27 The State responded that, because the allegations on which the charge was premised remained the same and could not be mistaken for a charge involving a weapon, it was clear that § 45-5-202(2)(c), MCA (1995)--recodified as § 45-5-210(1)(a), MCA (1997)-- had inadvertently been used in the original Information and that the proposed amendment to Count I was one of form only and should be allowed pursuant to § 46-11-205, MCA.

¶28 The District Court concluded the amendment was one of form, not substance. As a result, it denied Taylor's motion to dismiss Count I and granted the State's motion to amend Count I. Taylor asserts error.

¶29 Section 46-11-205, MCA, provides that a district court may permit an information to be amended as to matters of substance at any time, but not less than 5 days before trial; implicitly, then, an amendment as to form only may be permitted at any time. It is undisputed in this case that Count I in the State's Information recited an incorrect statutory

reference and that the State's request to amend Count I was to change only the statutory reference; it did not include any change to the underlying factual allegations on which Count I was premised.

¶30 We faced a similar situation in *State v. Romero* (1996), 279 Mont. 58, 77, 926 P.2d 717, 729, where several of the charges cited to the wrong statutes and the district court permitted amendment to reflect the correct statutory sections. On appeal, we applied earlier decisions holding that when the facts and circumstances are set forth with sufficient certainty to constitute an offense, an erroneous statutory reference will not invalidate a charge. We also determined that no prejudice resulted because the charging documents clearly established the facts and acts for which the defendant was charged. *Romero*, 279 Mont. at 78, 926 P.2d at 729-30 (citations omitted). We conclude that, pursuant to *Romero*, the State's proposed amendment to Count I was one of form, not substance, and, as a result, it was both timely and not prejudicial.

¶31 Taylor urges, however, that our determination in *State v. Knight* (1963), 143 Mont. 27, 30, 387 P.2d 22, 23, that an amendment which increases the minimum penalty--as happened in this case--is one of substance mandates the same conclusion here. That case is factually distinguishable.

¶32 In *Knight*, the State originally charged the defendant with robbery, an offense carrying a punishment of not less than 1 year in prison. On the day of trial, an amendment was sought--and granted--to also charge a prior conviction of forgery. The addition of the prior conviction charge increased the minimum sentence on conviction for the robbery to 10 years. Moreover, the case proceeded directly to trial after the amendment was allowed and the defendant was provided no opportunity to either admit or deny the previous conviction. *Knight*, 143 Mont. at 28, 30, 387 P.2d at 22, 23. On those facts, we concluded that, because the amendment increased the minimum penalty, it was one of substance. *Knight*, 143 Mont. at 30, 387 P.2d at 23.

¶33 In the present case, no additional charge was added to the Information which, in and of itself, increased the minimum penalty upon conviction. In addition, § 45-5-210(1)(a), MCA, the corrected statutory reference in the amendment, was the only statute in effect under which Taylor could have been charged for the allegations set forth in the Information. Thus, while the amendment resulted in a charge for which a minimum sentence existed via legislative action, the corrected statutory reference merely brought the attendant potential punishment with it. It did not, as in *Knight*, add a charge which

brought a separate increased penalty to the case.

¶34 We hold that the District Court did not err in denying Taylor's motion to dismiss the original Count I and in granting the State's motion to amend Count I to reflect the correct statutory reference.

¶35 3. Did the District Court err in requiring Taylor to register as a violent offender and submit to DNA testing when it did not notify him of those consequences before he changed his plea or at sentencing?

¶36 As special conditions and "[i]f deemed applicable to this case," the District Court ordered Taylor to register as a violent offender and submit to DNA testing. Taylor maintains that the court was required to advise him of these conditions either before he changed his plea or at the sentencing hearing, and failed to do so. As a result, according to Taylor, the requirements must be stricken from the court's Judgment and Commitment.

¶37 DNA testing and registration are required by §§ 44-6-103 and 46-23-504, MCA, respectively, upon conviction as a violent offender. However, these requirements do not fall within the parameters of the § 46-12-210, MCA, requirement that a district court advise of the maximum penalty, including the effect of any penalty enhancement provision or special parole restriction, prior to accepting a plea of guilty.

¶38 In any event, while the term "violent offense" is defined in § 46-23-502(9)(a), MCA, as including violations of certain specific statutes, Taylor was not convicted of violating any of the specified statutes. He was convicted of committing the offense of assault set forth in § 45-5-210(1)(a), MCA, namely, purposely or knowingly causing bodily injury to a peace officer or judicial officer. Thus, the special conditions relating to registration and submission to DNA testing, expressly conditioned by the District Court's "if" language, are not applicable to Taylor as a matter of law and he may not be required to register as a violent offender or submit to DNA testing. Therefore, we vacate the special conditions relating to registration and DNA testing.

¶39 4. Was Taylor denied effective assistance of counsel?

¶40 As part of his motion to withdraw his pleas, Taylor also requested the appointment of effective, competent counsel. He presented seven allegations of inadequate representation by his original counsel. The District Court made findings regarding the allegations and

concluded that counsel provided effective assistance under *State v. Hagen* (1995), 273 Mont. 432, 440, 903 P.2d 1381, 1386, which applied the standards of *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674.

¶41 Taylor asserts that the District Court erred and that this constitutes another reason he should be allowed to withdraw his pleas. He does not present any legal analysis establishing error by the court, however, and it is well established that an appellant bears the burden of establishing error. *See, e.g., Estate of Lande*, 1999 MT 162, ¶ 30, 295 Mont. 160, ¶ 30, 983 P.2d 308, ¶ 30 (citation omitted). Moreover, an appellant must cite to authorities supporting the issues and arguments raised (Rule 23(a)(4), M.R.App.P.), and Taylor has failed to do so. Therefore, we need not address this issue further.

¶42 We affirm the District Court and vacate the special conditions relating to registration and DNA testing.

/S/ KARLA M. GRAY

We concur:

/S/ J. A. TURNAGE

/S/ JIM REGNIER

/S/ WILLIAM E. HUNT, SR.

/S/ JAMES C. NELSON