No. 02-636

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 103

STATE OF MONTANA,

        Plaintiff and Respondent,

   v.

ROBERT WHITE,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Sixth Judicial District,
In and For the County of Park, Cause Nos. DC-01-34, 01-85, 02-06 & 02-32
Honorable Randal I. Spaulding, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

        Kirsten Mull Core, Attorney at Law, Bozeman, Montana

        For Respondent:

        Honorable Mike McGrath, Attorney General; John Paulson, Assistant
Attorney General, Helena, Montana

        Tara DePuy, County Attorney; Brett Linneweber, Deputy
County Attorney, Livingston, Montana

Submitted on Briefs:  March 13, 2003

Decided:  April 20, 2004

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1      Robert White (White) appeals the order of the Sixth Judicial District Court, Park County, which denied his motion to withdraw his pleas of nolo contendere. We affirm.

¶2      The sole issue on appeal is whether the District Court abused its discretion by denying White's motion to withdraw his pleas of nolo contendere.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3      The criminal charges in this case arose out of a boundary dispute between White and his neighbors, Michael and Susan Rose (Roses), involving their adjoining land near Livingston, Montana.  The Roses contended that they could access a channel of the Yellowstone River through the southeastern corner of their land, which ultimately became referred to as the "disputed area."  White, however, contended that he owned the land referred to as the "disputed area," and proceeded to close openings in their common fence, to apply orange paint, and to post "no trespassing" signs.  After two years of escalating tensions between the parties, both the Roses and White began filing numerous complaints against each other.  The proceedings were initially filed as civil complaints, but eventually evolved into criminal proceedings.

¶4       On August 28, 2000, White was charged with five counts of criminal mischief by amended complaint based upon allegations of tampering with property belonging to the Roses, specifically, vandalizing their common fence.  On May 31, 2001, White was charged with another count of criminal mischief for a similar action of tampering.

¶5     On May 16, 2001, White, proceeding *pro se*, was found guilty of all six counts of criminal mischief following a jury trial in Justice Court. Shortly thereafter, the Roses filed two other related civil actions against White: (1) a complaint alleging trespass, slander, property damages, and intentional infliction of emotional distress; and (2) a complaint to quiet title to the land in dispute.

¶6     On June 25, 2001, White signed a stipulation in District Court granting the Roses a temporary order of protection. On July 2, 2001, White was charged with misdemeanor violation of the order of protection when the Roses observed White, on horseback, within forty yards of their back door.

¶7     Six months later, on December 20, 2001, White was charged by Information with two counts of stalking, a felony, in violation of § 45-5-220, MCA (2001), for acts committed against the Roses allegedly occurring between June and November, 2001. The Information stated that White had harassed and threatened both Michael and Susan Rose by repeatedly approaching their residence and fence line, pounding stakes in the "disputed area," crossing the fence line and painting the stakes orange, and driving into the Roses' driveway entrance, all in violation of the valid order of protection. The Roses also stated that a former colleague of Michael Rose informed them that White had been seeking information about Rose. Additionally, Rose observed White near their home pounding stakes on their property with two other men, and, while sitting in his truck at the front entry of their home, White taunted them and took their picture.

¶8 On February 5, 2002, at his initial appearance and arraignment in District Court, White, accompanied by court-appointed counsel, pled not guilty to the two felony charges of stalking, and was released on $30,000 bond. On April 9, 2002, White was appointed a court-ordered investigator.

¶9 On April 22, 2002, all matters were set for a two-day trial on August 12 and 13, 2002, under the following District Court cause numbers: (1) DC 01-34: the five counts of misdemeanor criminal mischief; (2) DC 02-06: the additional charge of misdemeanor criminal mischief; (3) DC 02-32: the misdemeanor violation of the order of protection; and (4) DC 01-85: the two felony stalking charges.

¶10 On July 15, 2002, White's court-appointed investigator, his court-appointed counsel, the deputy county attorney, and Michael Rose inspected Roses' property. In an affidavit, White's court-appointed investigator stated that on July 15, 2002, she met with the Roses on their property, walked the boundaries of the Rose property, and was shown the "disputed area" by Michael Rose. During this inspection, Rose was asked whether he had walked the boundary of the "disputed area" with Mr. Vinton, from whom Rose had purchased the property, and he replied that he had not. As noted, White was not with the group.

¶11 On July 16, 2002, White appeared at a change of plea hearing and entered nolo contendere pleas to four of the charges pending against him. On the same date, the parties entered into an oral plea agreement (reduced to writing on August 5, 2002) in which the State agreed to dismiss the remaining charges at the time of sentencing and to recommend a lenient sentence with no incarceration or fines. Specifically, (1) in DC 01-34, White pled

4

nolo contendere to Count V, criminal mischief, spray painting the face of a horse, along with restitution in the amount of $62.31, in exchange for the State's dismissal of the other four counts of criminal mischief and recommendation of a six-month suspended sentence to run concurrently with DC-01-85; (2) in DC 02-06, White pled nolo contendere to the charge of violating the order of protection, in exchange for the State's recommendation of a six-month sentence with imposition deferred for six months to run concurrent with all other sentences; (3) in DC 02-32, White pled nolo contendere to the charge of criminal mischief, in exchange for the State's recommendation of a six-month sentence with imposition deferred for six months to run concurrent with all other sentences; and (4) in DC 01-85, White pled nolo contendere to Count II of the Information, which accused him of stalking Michael Rose, in exchange for the State's dismissal of Count I of the Information, felony stalking of Susan Rose. The State agreed that the sentence for the stalking charge would run concurrently with all other sentences referenced in the plea agreement, and, further, that the State would recommend a one-year sentence to the Department of Corrections, with imposition deferred for one year, based upon a number of conditions designed to prevent further contact or harassment of the Roses by White. The District Court set sentencing in all four of the cases for August 13, 2002.

¶12    White contends that several days after he entered his pleas, he learned of Rose's statement that Rose <u>had</u> <u>not</u> <u>walked</u> the property with Vinton. White asserts that Rose had stated in the related quiet title civil litigation that Rose <u>had</u> <u>walked</u> the property with Vinton. White maintains that he would not have changed his not guilty pleas to nolo contendere and

5

waived his trial rights had he known of Rose's July 15, 2002, admission. He contends Rose's statement in the earlier quiet title action constitutes a prior inconsistent statement which, White believed, seriously impacted the credibility of Rose, the State's primary witness.

¶13 Consequently, on August 13, 2002, the date set for sentencing in all consolidated causes, White filed a motion to withdraw all his nolo contendere pleas. The District Court heard oral argument by counsel for both White and the State, and heard testimony by White wherein he stated he wished to withdraw his nolo contendere pleas based upon the "newly discovered evidence" of Rose's inconsistent statement. He contended that knowledge of this statement would have materially affected the outcome of his trial and that, had he known of the statement, he would not have changed his pleas. The court denied the motion and proceeded to sentencing according to the plea agreement.

¶14 On August 28, 2002, White filed a notice of appeal to this Court.

## STANDARD OF REVIEW

¶15 Before accepting a plea of guilty, a trial court must satisfy statutory requirements such as those contained in §§ 46-12-210 and 46-16-105(1), MCA. Because a criminal defendant waives numerous constitutional rights and protections when pleading guilty, "it is a well-settled legal principle that a guilty plea must be a voluntary, knowing, and intelligent choice among the alternative courses of action open to the defendant." *State v. Radi* (1991), 250 Mont. 155, 159, 818 P.2d 1203, 1206 (citing *North Carolina v. Alford* (1970), 400 U.S. 25, 31, 91 S.Ct. 160, 165, 27 L.Ed.2d 162). Furthermore, a trial court may permit a plea of

guilty to be withdrawn before or after judgment, for good cause shown. Section 46-16-105(2), MCA. "The fundamental purpose of allowing the withdrawal of a guilty plea is to prevent the possibility of convicting an innocent [person]." *State v. Bowley* (1997), 282 Mont. 298, 304, 938 P.2d 592, 595.

¶16 The decision to grant or deny a motion to withdraw a plea is reviewed on appeal for abuse of discretion. *State v. Keys*, 1999 MT 10, ¶ 11, 293 Mont. 81, ¶ 11, 973 P.2d 812, ¶ 11. To determine whether good cause existed and whether a district court abused its discretion by denying a defendant's motion to withdraw a guilty plea, we consider three factors: (1) the adequacy of the court's interrogation at the time the plea was entered regarding the defendant's understanding of the consequences of the plea; (2) the promptness with which the defendant attempts to withdraw the plea; and (3) the fact that the plea was the result of a plea bargain in which the guilty plea was given in exchange for dismissal of another charge. *Bowley*, 282 Mont. at 304, 938 P.2d at 595. We have not established a rule or standard under which a trial court must address a request to withdraw a guilty plea; rather, each case must be considered in light of its unique record. *State v. Enoch* (1994), 269 Mont. 8, 11, 887 P.2d 175, 177.

## DISCUSSION

¶17 White asserts that the District Court abused its discretion in denying his motion to withdraw his nolo contendere pleas. He contends that, under the facts of this case, he should have been permitted to withdraw his pleas of nolo contendere prior to sentencing and proceed to trial on the merits.

7

¶18 White argues that his motion to withdraw satisfied the three-factor "good cause" test noted above. First, White asserts, and the State concedes, that White's motion, which was made on August 13, 2000, less than a month after entry of his guilty pleas, was timely, and, therefore, the second "good cause" factor was satisfied. The State correctly notes, however, that "promptness cannot outweigh all of the evidence which weighs in favor of the District Court's decision when analyzing the other factors." *Keys*, ¶ 21. White's argument, therefore, focuses on "good cause" factors one and three.

¶19 As to factor number one, White concedes that the District Court's interrogation at the time the plea was entered may have been adequate. White argues, however, that he could not have made a knowing waiver of his rights because he was not in possession of all the evidence that would have influenced his decision, specifically, Rose's inconsistent statement, which, he contends, would have caused him not to change his plea and proceed to trial on the merits. We note that White's counsel knew, or should have known, of Rose's inconsistent statement because she was among the group that inspected Rose's property on July 15, 2002, when Rose allegedly made the statement. However, even assuming, *arguendo*, that White, himself, did not know of the statement, the lack of such knowledge is irrelevant to the criteria as set forth in § 46-12-210, MCA, which defines whether a plea is made "knowingly."

¶20 According to § 46-12-210, MCA, a guilty plea is made "knowingly" if, before the court accepts the plea, the court determines the defendant has an understanding of the nature

of the charge, the mandatory minimum penalty, the maximum penalty, and the possibility

of imposition of restitution:

> **46-12-210. Advice to defendant.** (1) Before accepting a plea of guilty or nolo contendere, the court shall determine that the defendant understands the following:
> (a)(i) the nature of the charge for which the plea is offered;
> (ii) the mandatory minimum penalty provided by law, if any;
> (iii) the maximum penalty provided by law, including the effect of any penalty enhancement provision or special parole restriction; and
> (iv) when applicable, the requirement that the court may also order the defendant to make restitution of the costs and assessments provided by law
> . . . .

*See also* § 46-16-105(1)(b), MCA (plea accepted when "court has informed the defendant

of the consequences of the plea and of the maximum penalty provided by law that may be

imposed upon acceptance of the plea"). Pursuant to § 46-12-201(1), MCA, a court has a

duty to determine a defendant's understanding of the consequences of his guilty plea *before

the court accepts the guilty plea. Keys,* ¶ 14.

¶21     A review of the transcript from the July 16, 2002, change of plea hearing reveals that

the court's interrogation of White was exhaustive in naming the specific charges against

White (DC 01-34, DC 02-06, DC 02-32, and DC 01-85), describing the nature of each

charge, its penalties, and any restitution involved; and inquiring whether White was satisfied

with his attorney's competence, whether anyone had threatened or promised him anything

in exchange for his nolo contendere pleas aside from the plea agreement, whether he was

under the influence of drugs or alcohol or suffering from any mental problems, and whether

he was representing to the court that his pleas were made knowingly and voluntarily and of

9

his own volition. To each of these questions White responded that he understood the questions and was voluntarily and knowingly changing his not guilty pleas to nolo contendere.

¶22 Nonetheless, White contends his nolo contendere pleas entered July 16, 2002, were not made knowingly because he did not know at that time about Rose's alleged prior inconsistent statement. The State correctly argues, however, that a plea that is made "knowingly" does not refer to knowledge of facts, however or whenever acquired, that might have been available to be introduced as evidence at trial. Rather, a plea is made "knowingly" if it is made with an understanding of its consequences, including the maximum possible sentence that could result from the plea. *See* § 46-12-210, MCA; § 46-16-105(1)(b), MCA. The change of plea hearing transcript reveals that White testified he had a clear understanding of the consequences, including the maximum penalty that could result from a plea of nolo contendere. Moreover, on appeal, White does not contend that he did *not* have such an understanding at the time he changed his pleas to nolo contendere.

¶23 The holdings of a number of recent decisions by this Court support the District Court's decision to deny White's motion: *State v. Niederklopfer*, 2000 MT 187, ¶ 17, 300 Mont. 397, ¶ 17, 6 P.3d 448, ¶ 17 (court deemed defendant's plea "knowingly" where the "Plea of Guilty and Waiver of Rights" revealed defendant had a clear understanding of the offenses charged and the penalties which could result therefrom); *State v. Duff* (1993), 262 Mont. 288, 290, 865 P.2d 238, 239 (court held allegation of insufficiency of the evidence did not constitute good cause to permit withdrawal of guilty plea); and *State v. Milinovich*

10

(1991), 248 Mont. 373, 376, 812 P.2d 338, 340 (court held statement by a co-defendant, which defendant learned about after he changed his plea, did not constitute good cause to withdraw the plea).

¶24 We therefore conclude that the District Court acted within its discretion in denying White's motion to withdraw his nolo contendere pleas on the basis they were made "knowingly."

¶25 Finally, under the third "good cause" factor, White argues that at the time he moved to withdraw his nolo contendere pleas, he had not yet received the benefit of the plea agreement since the remaining charges were not dismissed until sentencing. A plea bargain agreement between a defendant and the State "is a contract which is subject to contract law standards." *Keys*, ¶ 18. Thus, a defendant must show "that there existed no consideration to support the plea agreement in order to invalidate it." *Keys*, ¶ 18; *see also Nitzel v. Wickman* (1997), 283 Mont. 304, 309, 940 P.2d 451, 454.

¶26 White received benefit in the form of the State's promises of dismissal of a number of charges against him and the fact the State recommended a lenient sentence that did not include incarceration or fines. Specifically, in exchange for White's nolo contendere plea to Count V in DC 01-34, to the violation of an order of protection in DC 02-06, to misdemeanor criminal mischief in DC 02-32, and to Count II, Stalking, in DC 01-85, the State agreed to dismiss four counts of criminal mischief in DC 01-34, and Count I, Stalking, in DC 01-85. This plea agreement was binding upon the State at the time the agreement was entered. The fact the State forewent its prosecution in these four counts creates valid

11

consideration for the contract. The State had a right to pursue these charges against White, and by dismissing them, the State suffered the deprivation of a right which the law did not require. *See* § 28-2-801, MCA. Valid contract consideration includes the promise to refrain from suing or pressing a claim. *Keys*, ¶ 18; *see also Devon Oil and Gas Co. v. Ayers* (1985), 218 Mont. 223, 227, 707 P.2d 523, 526. Thus, White benefitted from the State's promise to dismiss the remaining charges and its agreement to recommend a lenient sentence.

¶27 We conclude that the District Court did not abuse its discretion in denying White's motion to withdraw his nolo contendere pleas, and, therefore, affirm.

/S/ JIM RICE

We concur:

/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ JIM REGNIER
/S/ PATRICIA O. COTTER