No. 96-385

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997

STATE OF MONTANA,

Plaintiff and Respondent,

vs.

JIMMY RAE BOWLEY,

Defendant and Appellant.

APPEAL FROM:   District Court of the Fifth Judicial District,
In and for the County of Jefferson,
The Honorable Frank M. Davis, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Eric Rasmusson, Boulder, Montana

For Respondent:

Joseph P. Mazurek, Attorney General, Christina Lechner Goe, Assistant
Attorney General, Helena, Montana; Valerie D. Wilson, Jefferson County
Attorney, Deborah Butler, Deputy Jefferson County Attorney, Boulder,
Montana

FILED

APR 2 4 1997

Filed:

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs: March 27, 1997

Decided: April 24, 1997

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

The Fifth Judicial District Court, Jefferson County, denied Defendant Jimmy Rae Bowley's (Bowley) oral motions to withdraw his plea of guilty to the felony offense of criminal sale of dangerous drugs. Bowley appeals. We reverse and remand for further proceedings consistent with this opinion, concluding that the District Court abused its discretion when it denied Bowley's oral motions to withdraw his guilty plea.

We consolidate the issues raised on appeal into the following issue:

Did the District Court abuse its discretion in not allowing Bowley to withdraw his guilty plea?

## FACTUAL AND PROCEDURAL BACKGROUND

On October 20, 1995, Bowley was arraigned and pled not guilty to the felony charge of criminal sale of dangerous drugs (marijuana--Schedule I Narcotic Drug--second offense), in violation of §§ 45-9-101(1) and (4), 50-32-101(17) and 50-32-222 (Schedule I), MCA. A trial was scheduled for March 8, 1996. On March 1, 1996, the District Court vacated the trial set for March 8, 1996, and scheduled in its place a change of plea hearing.

At the March 8, 1996 change of plea hearing, the District Court began interrogating Bowley by explaining only the nature of his offense, his possible punishment, and his right to an attorney. Next, the District Court elicited the factual basis for Bowley's guilty plea by requesting that Bowley explain his actions. Bowley answered that he sold marijuana to a woman. Subsequently, the District Court granted the prosecutor's motion to amend the

2

information to indicate that this was Bowley's first offense. Only after eliciting the factual basis of Bowley's guilty plea did the District Court inform Bowley of his constitutional rights. Thereafter, Bowley pled guilty.

At the conclusion of the change of plea hearing, the District Court granted the prosecutor's motion to revoke Bowley's surety bond and to place him in the custody of the Jefferson County Jail until a presentence investigation was conducted. In response to this, Bowley moved to withdraw his guilty plea, which the District Court denied:

> MR. MASSMAN [Bowley's attorney]: Well, Your Honor, the defendant has just informed me he wanted to withdraw his guilty plea and change it back to not guilty, because he wasn't aware that he was going to get -- that his bond would be revoked. He assumed that his bond was going to --
> THE COURT: Well, for goodness sakes, we're going to continue to play fun and games with this matter. So that's denied. This is over.
> You're remanded back to the sheriff.
> And if you can get Mr. Condo to extend the bond, that will be great.

On March 11, 1996, Bowley's bond was reinstated and he was released from the Jefferson County Jail.

On March 19, 1996, Bowley, his attorney and the prosecutor executed a written Acknowledgment of Rights & Pre-Trial Agreement (Pre-Trial Agreement). This Pre-Trial Agreement was not filed with the District Court until May 17, 1996, the date scheduled for Bowley's sentencing hearing. Pursuant to the Pre-Trial Agreement, Bowley agreed to plead guilty to the felony offense of criminal sale of dangerous drugs and the prosecutor agreed to recommend a five-year suspended sentence. Furthermore, in lieu of the one year mandatory minimum prison sentence, the prosecutor agreed to recommend an alternative sentence

3

comprising one year of inpatient or outpatient drug treatment; supervision by the Adult Probation and Parole; compliance with the rules and regulations of Probation and Parole; remaining drug free and submitting to random testing at the request of Bowley's probation officer.

On May 17, 1996, before the District Court began the sentencing hearing, Bowley moved the court to discharge his attorney and to withdraw his guilty plea. The District Court, again, summarily denied his motion:

> MR. MASSMAN: Your Honor, before we start, could I advise the Court that the defendant, Jim Bowley, advised me that he would like to, A, fire me as his attorney, and , B, withdraw his guilty plea on the conviction that is the subject of today's sentencing.
> THE COURT: Well, that motion is denied. Let's go ahead with the sentencing.

During the sentencing hearing, the District Court heard testimony from Bud Walsh, a Probation and Parole Officer II, concerning his presentence investigation of Bowley. Walsh recommended that Bowley receive a five-year sentence to the Montana State Prison to run concurrently with any other sentence Bowley might receive in state or federal court. In response to this recommended sentence, the District Court asked the prosecutor to explain why the probation officer's recommendation differed from the plea agreement:

> THE COURT: Well, Ms. Butler [state prosecutor], why have we departed from the plea agreement here? Of course, I know I'm not bound by the plea agreement, and he knows that.
> MS. BUTLER: Yeah. The State recommended to Mr. Bowley -- At the time that I spoke with Mr. Massman [Bowley's attorney] in regard to this case, it was unaware that he'd been previously on probation, unaware that he had absconded from that probation, and unaware that the federal system

4

was interested in Mr. Bowley and incarcerated him.

Your Honor, the State hasn't -- Mr. Walsh, based on his investigation, gave you his recommendation. The State isn't diverting from that at this point, Your Honor. I think that the Court is well aware that the State agreed to a five-year commitment with a minimum, with it all suspended, if Mr. Bowley would do treatment. Mr. Walsh also indicated that Mr. Bowley has been in treatment twice, or at least once before, and it's obviously not done any good, because here he is again with a drug charge. And he never told -- he told Mr. Walsh that he still uses.

So at this point, I don't think it matters too much regarding Mr. Bowley, whether or not you give him five years in the State Prison or whether you suspend it. He's still incarcerated with the federal system, and that has yet to be tried.

And I don't have a problem with any sentence running concurrent with the federal system either. [Emphasis added.]

The District Court next heard from Bowley's attorney and finally addressed Bowley:

THE COURT:       Do you have anything to say, Mr. Bowley?

THE DEFENDANT:       Only that I tried to -- When I was here in March, immediately, within one minute after I changed my plea to guilty, I tried to withdraw it and change it back to not guilty. And I would at this time like to change my plea to not guilty.

THE COURT:       Well, you told the probation officer, when he interviewed you, that, "I sold an ounce of marijuana to a friend who had called repeatedly and begged me to score for her." I guess that's a drug term, huh, score for her? "I normally wouldn't have done it, but finally did just to get her to quit bothering me."

So you've admitted two or three times that you did it. And you would just be postponing the inevitable if you withdrew your plea. So I'm not going to let you withdraw your plea. . . ..

Immediately thereafter, the District Court sentenced Bowley to a five-year sentence in the Montana State Prison to run concurrently with any other sentence Bowley might receive in state or federal court. From this judgment and sentence, Bowley appeals. We reverse and remand for further proceedings consistent with this opinion.

## STANDARD OF REVIEW

Before accepting a plea of guilty, a trial court must satisfy statutory requirements such as those contained in §§ 46-12-210 and 46-16-105(1), MCA. Because a criminal defendant waives numerous constitutional rights and protections when pleading guilty, "it is a well-settled legal principle that a guilty plea must be a voluntary, knowing, and intelligent choice among the alternative courses of action open to the defendant." State v. Radi (1991), 250 Mont. 155, 159, 818 P.2d 1203, 1206 (citing North Carolina v. Alford (1970), 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162). Furthermore, a trial court may permit a plea of guilty to be withdrawn and a plea of not guilty substituted at any time before or after judgment, for good cause shown. Section 46-16-105(2), MCA. "The fundamental purpose of allowing the withdrawal of a guilty plea is to prevent the possibility of convicting an innocent [person]." State v. Johnson (1995), 274 Mont. 124, 127, 907 P.2d 150, 152 (citations omitted).

We have not established a rule or standard under which a trial court must address a request to withdraw a guilty plea; rather, each case must be considered in light of its unique record. State v. Enoch (1994), 269 Mont. 8, 11, 887 P.2d 175, 177. Furthermore, we review a district court's denial of a motion to withdraw a guilty plea to determine if the court abused its discretion. Enoch, 887 P.2d at 177. To determine whether good cause existed and whether a district court abused its discretion by denying a defendant's motion to withdraw a guilty plea, we consider three factors:

> (1)    the adequacy of the court's interrogation at the time the plea was entered regarding the defendant's understanding of the consequences of

the plea;

(2)    the promptness with which the defendant attempts to withdraw the plea; and

(3)    the fact that the plea was the result of a plea bargain in which the guilty plea was given in exchange for dismissal of another charge.

Johnson, 907 P.2d at 152 (citing Enoch, 887 P.2d at 177; Radi, 818 P.2d at 1206).

During both the March 8, 1996 change of plea hearing and the May 17, 1996 sentencing hearing, the District Court summarily rejected Bowley's three oral motions to withdraw his guilty plea to the felony offense of criminal sale of dangerous drugs. On appeal, Bowley argues that the District Court erred by denying his motions to withdraw his guilty plea because good cause existed to permit such withdrawal. Accordingly, we consider the three factors discussed previously to determine whether good cause existed and whether the District Court abused its discretion when it denied Bowley's oral motions to withdraw his guilty plea.

## DISCUSSION

**Did the District Court abuse its discretion in not allowing Bowley to withdraw his guilty plea?**

At the outset, we note that the State contends that Bowley never filed a written motion to withdraw his guilty plea, but rather made all motions to withdraw his plea orally without stating any supporting grounds. The State, therefore, argues that we should not consider Bowley's appeal because he did not preserve these issues for appeal.

The State's argument is unpersuasive. First, § 46-16-105(2), MCA, does not require

7

that a defendant's motion to withdraw a guilty plea be in writing. Second, Bowley did not provide supporting grounds for his motions to withdraw his guilty plea because the District Court never afforded him the opportunity. Rather, the District Court summarily denied each motion. Consequently, we will address the merits of the arguments presented on appeal.

Bowley contends that good cause existed to permit the withdrawal of his guilty plea because the District Court's interrogation was inadequate at the time he entered his guilty plea, his motions to withdraw his guilty plea were prompt, and his guilty plea was the result of a plea agreement breached by the prosecutor during his sentencing hearing. Bowley, therefore, argues that the District Court abused its discretion when it denied his motions to withdraw his guilty plea. Consequently, Bowley asserts that, on remand, the District Court should either allow him to withdraw his guilty plea or, alternatively, sentence him in accordance with the Pre-Trial Agreement. The State responds that the District Court did not abuse its discretion by denying Bowley's motions to withdraw his guilty plea. The State contends that although Bowley's motions were prompt, the District Court's interrogation was adequate and Bowley's plea was based on a plea agreement which the prosecutor did not breach. Therefore, the State asserts that we should affirm the District Court's denial of Bowley's motions to withdraw his guilty plea. We conclude that good cause existed for the District Court to permit withdrawal of Bowley's guilty plea and that the District Court abused its discretion by denying Bowley's motions to withdraw his guilty plea and thereby erred. Accordingly, we reverse and remand for further proceedings consistent with this opinion.

8

As to the first factor, the adequacy of the court's interrogation at the time the plea was entered, Bowley asserts that a number of deficiencies exist. First, Bowley argues that, during the March 8, 1996 change of plea hearing, the District Court failed to ask whether Bowley was under the influence of drugs or alcohol. Relying on Enoch, Bowley contends that this omission violates the voluntary, knowing and intelligent standard required to be met during a change of plea hearing, and, therefore, the District Court's interrogation was inadequate. See Enoch, 887 P.2d at 180-81. The State concedes that the District Court failed to ask whether Bowley's competency was compromised by the use of drugs or alcohol. However, the State responds that this omission is harmless error. We agree.

We stated in Enoch that for an interrogation to be adequate, a court must examine the defendant and determine, among other things, that the defendant is not acting under the influence of drugs or alcohol. Enoch, 887 P.2d at 178 (quoting State v. Mahoney (1994), 264 Mont. 89, 94-95, 870 P.2d 65, 68). In Enoch, during the district court's interrogation, the defendant testified that he was taking medication. We explained that this testimony should have prompted the district court to inquire further concerning the defendant's medical condition, the type of medication he was taking, or the medication's side effects. Enoch, 887 P.2d at 181. Because the court did not make further inquiry, it left a doubt as to whether the voluntary, knowing and intelligent standard was met during the change of plea hearing. Enoch, 887 P.2d at 180.

Here, unlike the factual situation in Enoch, nothing in the record indicates that Bowley

was actually under the influence of any drugs or alcohol when he entered his guilty plea on March 8, 1996. Furthermore, eleven days after the change of plea hearing, Bowley did sign the Pre-Trial Agreement stating that he was not under the influence of any drugs or alcohol at the time the he executed the Pre-Trial Agreement. Therefore, without some indication that Bowley was actually under the influence of drugs or alcohol, the District Court's failure to expressly question whether Bowley was under the influence of drugs or alcohol during the change of plea hearing is harmless error.

Next, Bowley asserts that, during the March 8, 1996 change of plea hearing, the District Court also did not question him as to the competency of his counsel, whom he subsequently sought to discharge at the May 17, 1996 sentencing hearing. Bowley argues that this omission also caused the District Court's interrogation to be inadequate.

The State responds that the District Court asked Bowley two separate times whether he had adequate time to discuss his case with his attorney, and, furthermore, advised Bowley that he was entitled to a qualified lawyer at and after trial. The State asserts that this shows that the District Court did inquire into the competency of Bowley's counsel. Furthermore, the State notes that Bowley signed the Pre-Trial Agreement wherein he stated he had "the right to effective assistance of counsel." Moreover, the State points out that Bowley did not notify the court of his dissatisfaction with his attorney until he moved the court to discharge his attorney at the sentencing hearing without providing any specific reasons. Based on the foregoing, the State argues that the District Court's interrogation was adequate. We disagree.

By advising Bowley of his right to a qualified attorney, the District Court did meet the requirement of § 46-12-210(1)(b), MCA. However this statement, combined with the court's inquiry into the adequacy of Bowley's time with his attorney, did not satisfy the requirement that the District Court must determine that Bowley "admits his counsel is competent and he has been well advised . . .." Enoch, 887 P.2d at 178 (quoting Mahoney, 870 P.2d at 68). Furthermore, the Pre-Trial Agreement, while setting forth Bowley's right to "effective assistance of counsel" does not satisfy this requirement either because it was not timely. Bowley and the prosecutor did not execute the Pre-Trial Agreement until eleven days *after* he changed his plea to guilty. We refuse to permit acceptance of a guilty plea "based on information provided to a criminal defendant in bits and pieces over a long period of time." Enoch, 887 P.2d at 180 (holding that an acknowledgment of rights form signed by the defendant six months prior to entering his plea of guilty was not timely with regard to the requirements that must be met at the time a plea is accepted).

While the District Court's failure to inquire as to whether Bowley was under the influence of drugs or alcohol was harmless error, the District Court's failure to inquire into the competency of Bowley's counsel is not. Here, unlike the absence of any indication in the record that Bowley was under the influence of drugs or alcohol, the record shows that Bowley ultimately notified the court, at the sentencing hearing on May 17, 1996, that he wanted to discharge his attorney. Contrary to the State's assertion that Bowley did not provide the court with any specific reasons to support his motion to discharge his attorney,

11

we note that the District Court did not provide Bowley with the opportunity to do so. Rather, the District Court, without inquiring as to the reasons for Bowley's dissatisfaction with his attorney, summarily denied Bowley's motion to discharge his attorney as well as his motion to withdraw his guilty plea. The District Court's failure to inquire further to determine whether Bowley admitted that his counsel was competent and that he had been well advised, raises doubts as to whether the voluntary, knowing and intelligent standard was met when Bowley changed his plea to guilty on March 8, 1996. Consequently, we conclude that the District Court's interrogation during the March 8, 1996 change of plea hearing was not adequate in this respect.

Finally, Bowley contends that, during the March 8, 1996 change of plea hearing, the District Court elicited the factual basis for his plea of guilty prior to informing him of his constitutional rights. Bowley asserts that under § 46-12-210(1)(c)(iv), MCA, a court must determine that the defendant understands he has a right "not to be compelled to reveal personally incriminating information," before accepting a plea of guilty. Therefore, Bowley argues that the District Court's interrogation was inadequate because the court violated § 46-12-210, MCA, when it elicited the factual basis for Bowley's guilty plea before informing him of his constitutional rights, specifically his right against self-incrimination. The State does not respond to this argument.

In Enoch, we concluded that the district court violated the statutory requirements of § 46-12-210, MCA, when it failed to advise the defendant of a number of constitutional

12

rights, including his right not to be compelled to reveal incriminating information. We stated:

> In addition to being statutory requirements, these are not minor or inconsequential matters. One of the court's omissions concerned the fundamental right against self-incrimination as guaranteed by the Montana and United States Constitutions. Art. II, Sec. 25. Mont.Const.; U.S. Const. Amend. V. Rights this fundamental cannot be addressed adequately by the District Court's broad statement that [the defendant] was "giving up virtually all of [his] rights . . .."

Enoch, 887 P.2d at 179-80 (second alteration in original). Similarly, we conclude, in this case, that Bowley's constitutional rights were not adequately addressed because the District Court failed to inform Bowley of his constitutional rights *before* eliciting from him the factual basis of his guilty plea.

Here, unlike the case in Enoch, the District Court did not entirely omit informing Bowley of his right against self-incrimination at the March 8, 1996 change of plea hearing. Yet, the court failed to inform Bowley of his constitutional rights, specifically his right against self-incrimination, *before* requesting that Bowley describe the crime he allegedly committed. Rather, before directly questioning Bowley about his crime, the District Court only explained to Bowley the nature of his offense, his possible punishment and his right to an attorney. Because a criminal defendant waives numerous constitutional rights and protection when pleading guilty, "it is a well-settled legal principle that a guilty plea must be a voluntary, knowing, and intelligent choice among the alternative courses of action open to the defendant." Radi, 818 P.2d at 1206 (citing North Carolina v. Alford (1970), 400 U.S.

13

25, 91 S.Ct. 160, 27 L.Ed.2d 162). By conducting the change of plea hearing in this manner, the District Court failed to adequately provide Bowley with information concerning his constitutional rights--information that Bowley needed to make a voluntary, knowing and intelligent choice concerning his guilty plea.

Therefore, as to the first factor, we conclude that the District Court's failure to investigate whether Bowley was under the influence of drugs or alcohol was harmless error, standing alone. However, the District Court also failed to inquire about the competency of Bowley's counsel and to inform Bowley about his right against self-incrimination prior to eliciting the factual basis for Bowley's guilty plea. That is, the District Court erred by failing to comply with the requirements set forth both in § 46-12-210, MCA, and Enoch. Consequently, we conclude that the District Court's interrogation at Bowley's change of plea hearing was inadequate. This first factor, thus, weighs in Bowley's favor.

The second factor, promptness, is not in dispute. Bowley made his first oral motion to withdraw his guilty plea and reinstate his original plea of not guilty at the conclusion of the change of plea hearing on March 8, 1996. Further, he made two additional oral motions to withdraw his guilty plea at the May 17, 1996 sentencing hearing, once at the beginning of the proceeding and again just before the judge sentenced him. The State concedes that Bowley's motions to withdraw his guilty plea were promptly made. Accordingly, the second factor weighs in Bowley's favor, also.

Last, we consider the third factor, whether the plea was the result of a plea bargain

14

in which the guilty plea was given in exchange for dismissal of another charge. Bowley notes that in the Pre-Trial Agreement the State agreed to recommend a five-year suspended sentence along with other specified conditions in exchange for Bowley's guilty plea. Bowley asserts that, during the May 17, 1996 sentencing hearing, the prosecutor did not recommend the suspended sentence agreed upon in the Pre-Trial Agreement, and, therefore, breached that agreement. Furthermore, Bowley argues that the District Court abused its discretion by denying his final motion to withdraw his guilty plea because good cause existed to permit such withdrawal due to the breached plea agreement.

The State responds that the fact that Bud Walsh, a probation officer, recommended a different sentence from that agreed upon in the Pre-Trial Agreement does not constitute breach on the part of the prosecutor. Moreover, the State contends that the record shows the prosecutor recommended the sentence agreed upon in the Pre-Trial Agreement, and, therefore, the prosecutor did not breach the plea agreement. Consequently, the State argues that Bowley's guilty plea should stand. We disagree.

While the Pre-Trial Agreement did not involve a guilty plea in exchange for a dismissal of another charge, it did involve a recommendation for sentence suspension, and, therefore, at first glance, would seem to weigh in favor of allowing Bowley's guilty plea to stand. See Radi, 818 P.2d at 1208. We have repeatedly held that this Court "will not lend its assistance to an accused criminal in escaping his or her obligations of a plea bargain after accepting its benefits." Johnson, 907 P.2d at 153 (citations omitted). On the other hand, we

15

recognize that a plea agreement presupposes fundamental fairness in the process of securing such an agreement between the defendant and the prosecutor and so we have held that prosecutors, also, are bound by a plea agreement:

> This phase of the process of criminal justice, and the adjudicative element inherent in accepting a plea of guilty, must be attended by safeguards to insure the defendant what is reasonably due in the circumstances. Those circumstances will vary, but a constant factor is that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.
>
> Prosecutors who engage in plea bargaining must meet strict and meticulous standards of both promise and performance as a plea of guilty resting in any significant degree on an unfulfilled plea bargain is involuntary and subject to vacation. Prosecutorial violations, even if made inadvertently or in good faith to obtain a just and mutually desired end, are unacceptable.

State v. Allen (1981), 197 Mont. 64, 68-69, 645 P.2d 380, 382 (citations omitted). Consequently, upon closer examination of the proceedings that took place prior to imposition of Bowley's sentence on May 17, 1996, we conclude that the prosecutor did not recommend the suspended sentence set forth in the Pre-Trial Agreement, and, therefore, did not meet the strict and meticulous standards of performance of the plea agreement. As a result, this third factor also weighs in Bowley's favor.

As set forth previously, Bud Walsh, the probation officer, testified during the May 17, 1996 sentencing hearing and recommended that Bowley serve a five-year sentence in the Montana State Prison to run concurrently with any other sentence Bowley might receive in state or federal court. Thereafter, the District Court asked the prosecutor to explain why the probation officer's recommended sentence differed from the Pre-Trial Agreement. The

16

prosecutor, in response, acknowledged that in the Pre-Trial Agreement, the State had agreed to recommend a five-year suspended sentence if Bowley agreed to plead guilty to the charge of criminal sale of dangerous drugs and to undergo drug treatment. However, the State continued:

> Mr. Walsh also indicated that Mr. Bowley has been in treatment twice, or at least once before, and it's obviously not done any good, because here he is again with a drug charge. And he never told -- he told Mr. Walsh that he still uses.
> So at this point, I don't think it matters too much regarding Mr. Bowley, whether or not you give him five years in the State Prison or whether you suspend it. He's still incarcerated with the federal system, and that has yet to be tried.
> And I don't have a problem with any sentence running concurrent with the federal system either. [Emphasis added.]

The State argues correctly that when a probation officer recommends a sentence different from that contained in a plea agreement, this does not constitute breach of the plea agreement by the prosecutor because the probation officer's recommendation is not equivalent to the prosector's recommendation. State v. Yother (1992), 253 Mont. 128, 137, 831 P.2d 1347, 1352. However, we are not concerned with the fact that Bud Walsh recommended a sentence different from that contained in the Pre-Trial Agreement. Rather, we are concerned with the fact that the prosecutor recommended a sentence different from that contained in the Pre-Trial Agreement when the prosecutor effectively endorsed Bud Walsh's sentence recommendation, as seen from the previous transcript excerpt.

While the State did acknowledge the five-year suspended sentence recommendation contained in the Pre-Trial Agreement, we cannot characterize anything else in the

17

prosecutor's response to the District Court as a recommendation of this suspended sentence. Rather, as the emphasized language shows, the prosecutor effectively recommended that Bowley serve a five-year sentence to run concurrently with any other sentence, as suggested by Bud Walsh, the probation officer. By failing to recommend the suspended sentence contained in the Pre-Trial Agreement, the prosecutor did not satisfy the strict and meticulous standards of performance of the plea agreement and thereby breached that agreement. Consequently, we conclude that the Pre-Trial Agreement is involuntary and is subject to being vacated. See Allen, 645 P.2d at 382.

In summary, the three factors discussed above show that good cause existed to permit Bowley to withdraw his guilty plea--the District Court's interrogation was inadequate, Bowley's motions to withdraw his guilty plea were prompt, and the State breached the Pre-Trial Agreement. Accordingly, we hold that the District Court abused its discretion by denying Bowley's motions to withdraw his guilty plea, and in so doing, erred.

Bowley suggests that, on remand, the District Court should either allow Bowley to withdraw his guilty plea or, alternatively, sentence him in accordance with the Pre-Trial Agreement. We agree. Due to both the inadequacy of the District Court's interrogation at the March 8, 1996 change of plea hearing and the prosecutor's breach of the Pre-Trial Agreement at the May 17, 1996 sentencing hearing, we remand this case to the District Court with specific instructions. First, should Bowley desire to do so, the District Court should allow him to withdraw his guilty plea. Alternatively, if on remand Bowley elects to be

18

sentenced in accordance with the Pre-Trial Agreement, the District Court should do so.

Reversed and remanded for further proceedings consistent with this opinion.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____
Justices

19

Justice Terry N. Trieweiler specially concurring.

I concur with the majority's conclusion that the District Court abused its discretion when it denied the defendant's motions to withdraw his guilty plea. Therefore, I concur in the result of the majority opinion.

However, I also agree that based on simple notions of fairness, and our prior decision in *State v. Allen* (1981), 197 Mont. 64, 645 P.2d 380, "[p]rosecutors who engage in plea bargaining must meet strict and meticulous standards of both promise and performance as a plea of guilty resting in any significant degree on an unfulfilled plea bargain is involuntary and subject to vacation." *Allen*, 197 Mont. at 69, 645 P.2d at 382.

I conclude that when guilty pleas are induced by promises from one agent of the State to recommend a suspended sentence, and that recommendation is then rendered meaningless because another agent of the State makes a contrary recommendation, the State has not met "strict and meticulous standards of both promise and performance." Therefore, I do not agree with the majority's conclusion that "when a probation officer recommends a sentence different from that contained in a plea agreement, this does not constitute breach of the plea agreement by the prosecutor." Furthermore, to the extent that our prior decisions in *State v. Yother* (1992), 253 Mont. 128, 831 P.2d 1347, and *State v. Milinovich* (1991), 248 Mont. 373, 812 P.2d 338, hold otherwise, I would reverse those decisions.

What sense does it make to pay lip service to the principle that an accused person has a right to rely on material representations made to him or her as an inducement to enter into a plea agreement, but then allow the practical effect of that inducement to be circumvented by permitting another agent of the same government to do just the opposite of what was promised to the defendant? Is there any question whose recommendation the district judge will take more seriously? Because of that practical reality, what benefit did Bowley get from pleading guilty?

In this case, Bowley pled guilty based on a promise, made by the agent of the State who was responsible for prosecuting him, that a suspended sentence would be recommended. After he signed the plea agreement, and purportedly based on a subsequent investigation, another agent of the State filed a report with the District Court recommending that he serve five years in prison. If, in fact, information such as a prior probation, the failure of prior treatment, and involvement in the federal criminal justice system were learned subsequent to the agreement but could not have been known at the time of the agreement, then the remedy for the State was to repudiate the agreement based on mistake and allow Bowley to withdraw his guilty plea. No principle of fairness or contract law allows the State to retain the benefit of its agreement and avoid its obligation. That is what would have happened in this case had the District Court's refusal to allow Bowley to withdraw his guilty plea not been reversed on other grounds. I would not sanction that kind of shell game.

For these reasons, while I concur with the result of the majority opinion, I do not agree with all that is said therein.

_____
                    Justice

Justice William E. Hunt, Sr., joins in the foregoing specially concurring opinion.

_____
                    Justice

22