No. 00-612

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 85

STATE OF MONTANA,

Plaintiff and Respondent,

v.

DANIEL MUNOZ,

Defendant and Appellant.

APPEAL FROM: District Court of the Second Judicial District,

In and for the County of Silver Bow,

The Honorable James E. Purcell, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Kevin E. Vainio, Butte, Montana

For Respondent:

Mike McGrath, Montana Attorney General, Micheal S. Wellenstein, Assistant Montana Attorney General, Helena, Montana; Robert M. McCarthy, Silver Bow County Attorney, Brad Newman, Deputy Silver Bow County Attorney, Butte, Montana

Submitted on Briefs: April 5, 2001
Decided: May 15, 2001

Filed:

_____

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 The Defendant, Daniel Munoz (Munoz), appeals an order denying his motion to withdraw a guilty plea entered by the Second Judicial District Court, Silver Bow County, on June 16, 2000. The State concedes that it breached the plea agreement, and therefore a reversal and remand is proper. At issue is whether the District Court or Munoz possesses the legal right to choose from available remedies where the State breaches a plea agreement.

¶2 We reverse and remand for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 Following his arrest in 1999, Munoz entered a pretrial agreement with the State. The State agreed to recommend that Munoz receive a three-year sentence in exchange for his voluntary plea of guilty to one count of sexual assault. The State also agreed that if Munoz was amenable to sex-offender treatment in a non-custodial program, it would recommend a suspended sentence.

¶4 On January 13, 2000, Munoz appeared in District Court, and changed his plea to guilty. The court accepted the plea, and ordered a presentence investigation.

¶5 At a March 28, 2000 sentencing hearing, the prosecutor urged the court to adopt the five-year sentence recommended by Munoz's probation officer, who conducted the presentence investigation and issued a report. In addition to recommending the five-year sentence, the probation officer testified at the hearing that community supervision presented too much of a risk. Therefore, the officer recommended that all sex-offender treatment should be completed in prison.

¶6 The District Court sentenced Munoz to the recommended five-year sentence, and ordered that he would be ineligible for parole or probation unless he completed all three phases of the prison sex-offender treatment program while incarcerated.

¶7 On April 27, 2000, Munoz filed a motion to withdraw his guilty plea and a motion for a

new trial. He contended that he was entitled to withdraw his guilty plea and proceed to trial due to the State's breach of the plea agreement.

¶8 The District Court denied his motion on June 16, 2000. The court observed in reaffirming the sentence that three years was "not sufficient time to complete the 3 phases of the Program and particularly keeping in mind the Defendant received credit for 154 days served prior to sentencing."

¶9 Munoz appealed the order denying his motion to withdraw his guilty plea.

## DISCUSSION

¶10 The State concedes for purposes of this case it breached the plea agreement. We therefore will not address whether a breach occurred. Accordingly, we hold that the order of the District Court denying Munoz's motion to withdraw his guilty plea was an abuse of discretion and is reversed. *See State v. Schoonover*, 1999 MT 7, ¶ 10, 293 Mont. 54, ¶ 10, 973 P.2d 230, ¶ 10 (setting forth abuse of discretion standard for denial of motion to withdraw guilty plea) (citation omitted).

¶11 We turn, instead, to the legal question presented by the parties of whether the sentencing court or the defendant should have the right to choose the remedy where the State breaches a plea agreement. Our review of such questions of law is plenary, and we determine whether a particular conclusion of law is correct. *See State v. Weaver*, 1998 MT 167, ¶ 43, 290 Mont. 58, ¶ 43, 964 P.2d 713, ¶ 43 (citations omitted).

### *Issue Presented*

*Upon remand, does Munoz have the right to choose the remedy, either specific performance of the agreement or the right to withdraw his guilty plea, due to the State's breach of the plea agreement?*

¶12 The Defendant Munoz has specifically requested that, due to the State's breach of the plea agreement, he should be allowed to withdraw his guilty plea, which would require that the District Court vacate his sentence and that this matter proceed to trial. The State contends that the sentencing court, not the defendant, possesses the right to choose the appropriate remedy, and argues that under the circumstances here specific performance of the plea agreement would be appropriate: Munoz should receive a new sentencing hearing

before a new judge and the State shall then in good faith recommend the three-year sentence pursuant to the plea agreement.

¶13 Generally, when the State breaches a plea bargain agreement, one of two equitable remedies is available to safeguard a defendant's due process rights.[1] *See*, *e.g.*, *State v. Persak* (1993), 256 Mont. 404, 407, 847 P.2d 280, 281-82; *State v. Rardon*, 1999 MT 220, ¶ 13, 296 Mont. 19, ¶ 13 986 P.2d 424, ¶ 13 (citing *Santobello v. New York* (1971), 404 U. S. 257, 263, 92 S.Ct. 495 499, 30 L.Ed.2d 427).

¶14 This notion of an equitable "remedy" for a "breach" is unquestionably guided by general principles of contract law. *See State v. Keys*, 1999 MT 10, ¶ 18, 293 Mont. 81, ¶ 18, 973 P.2d 812, ¶ 18 (stating that a plea bargain agreement is a contract which is subject to contract law standards); *State v. Allen* (1982), 685 P.2d 333, 335 (stating that it is clear that "the *Santobello* holding was based in part on analogies to contract law").

¶15 Even so--as this Court acknowledged when it first substantively addressed the U.S. Supreme Court's decision in *Santobello*--where a defendant's due process rights are concerned a "strict contract characterization" of a plea bargain may give way to a "reasonable expectations" standard. *See Allen*, 685 P.2d at 335 (citing *Cooper v. United States* (4th Cir. 1979), 594 F.2d 12, and identifying circuit court's holding that the "technical" formation of a contract is not required where defendant has "expectations reasonably formed in reliance upon the honor of the government"). Even the standard articulated under *Cooper*, however, relies on "general" principles of contract in that it clearly resembles an ordinary quasi-contract analysis.

¶16 The first equitable remedy identified by the *Santobello* court is "specific performance" by the government. To safeguard a defendant's due process rights, circumstances may require the State uphold its end of the bargain, and, before a new sentencing judge, comply with the terms and conditions of the plea agreement by recommending a specific sentence, moving for the dismissal of other charges, or simply not opposing the defendant's requested sentence. *See Rardon*, ¶ 13; § 46-12-211(1), MCA (providing examples of "performance" by prosecutor).

¶17 Under Montana law, however, where specific performance is imposed a defendant enjoys no contractual right or entitlement to a recommended sentence. In *Benjamin v. McCormick* (1990), 243 Mont. 252, 255, 792 P.2d 7, 9, this Court, in considering whether specific performance could bind a court to comply with a plea-bargain agreement, held

that "[u]nder the present law, the sentencing court was not a party to the bargain and was not subject to its terms. The enforceability of the bargain is, therefore, not an issue." *See also Persak*, 256 Mont. at 408, 847 P.2d at 282) remedy of specific performance does not entitle defendant to the implementation of State's recommendation).

¶18 The second equitable remedy is "rescission." Circumstances may require that a defendant be allowed to withdraw his or her guilty plea and then face trial on the original charges as if the plea agreement had never been entered--which also means that the defendant's "performance" is returned; i.e., his or her constitutional rights that were waived by the guilty plea are thereafter reinstated. *See State v. Schoonover*, 1999 MT 7, ¶ 9, ¶ 16, 293 Mont. 4, ¶ 9, ¶ 16, 973 P.2d 230, ¶ 9, ¶ 16; § 46-16-105(2), MCA (providing that "[a]t any time before or after judgment, the court may, for good cause shown, permit the plea of guilty or *nolo contendere* to be withdrawn and a plea of not guilty substituted").

¶19 As fully briefed by the parties here, a conflict exists in our case law, subsequent to this Court's adoption of the above principles established by the U.S. Supreme Court in *Santobello v. New York*, as to whether the defendant or the sentencing judge has the right to choose the remedy. It is this legal uncertainty that shall be addressed and rectified by our decision here today.

¶20 The U.S. Supreme Court, in reaching its seminal due process holding in *Santobello*, suggested the two remedies discussed above without ever actually reaching the question of choice of remedies. Rather, the Court clearly deferred to the state court, rather than impose its own decision as to which remedy would be appropriate under the circumstances:

> The ultimate relief to which petitioner is entitled we leave to the discretion of the state court, which is in a better position to decide whether the circumstances of this case require only that there be specific performance of the agreement on the plea, in which case petitioner should be resentenced by a different judge, or whether, in the view of the state court, the circumstances require granting the relief sought by petitioner, i.e., the opportunity to withdraw his plea of guilty.

*Santobello, 404 U.S. at 263, 92 S.Ct. at 499. More than one solution to the question of choice of remedy can be inferred from the foregoing. On the one hand, for example, the Santobello Court indicates that the choice should be within the sole discretion of the sentencing court. On the other, the Court does not necessarily rule out the possibility that a court could exercise this very same discretion*

*and offer the choice to the defendant.*

¶21 The suggestive rather than absolute language of the *Santobello* decision was explored further in Justice Marshall's concurrence and dissent, which observed that "a majority of the Court appears to believe that in cases like these, when the defendant seeks to vacate the plea, that relief should generally be granted." *Santobello*, 404 U.S. at 268, 92 S.Ct. at 502. Thus, Justice Marshall, along with two other justices, opined that a defendant should be allowed to withdraw his guilty plea and reclaim his right to a trial. *See Santobello*, 404 U.S. at 268-69, 92 S.Ct. at 502. This observation followed the concurrence of Justice Douglas, who opined that "[i]n choosing a remedy, however, a court ought to accord a defendant's preference considerable, if not controlling, weight inasmuch as the fundamental rights flouted by a prosecutor's breach of a plea bargain are those of the defendant, not of the State." *Santobello*, 404 U.S. at 267, 92 S.Ct. at 501.

¶22 The significance of the Court's differing views lies in the fact that the case was a state court decision, one over which the Supreme Court acknowledges it lacked supervisory jurisdiction. *See Santobello*, 404 U.S. at 266-67, 92 S.Ct. at 501 (Douglas, J., concurring). Thus, the Court did not establish binding law beyond the holding itself. Rather, the Court concluded that the "interests of justice and appropriate recognition of the duties of the prosecution in relation to promises made in the negotiation of pleas of guilty will be best served by remanding the case to the state courts for further consideration." *Santobello*, 404 U.S. at 262-63, 92 S.Ct. at 499.

¶23 While the "discretion of the court" rule expressed by the majority in *Santobello* has remained fairly consistent among the federal circuits, *see*, *e.g.*, *United States v. Canada* (1st Cir. 1992), 960 F.2d 263, 271; *Peavy v. United States* (6th Cir. 1994), 31 F.3d 1341, 1346; *United States v. Bowler* (7th Cir. 1978), 585 F.2d 851, 856; *United States v. Van Thournout* (8th Cir. 1996), 100 F.3d 590, 594; *United States v. Chiu* (9th Cir. 1997), 109 F.3d 624, 626, the rule has been refined over time.

¶24 The First Circuit, for example, has expressed a preference for specific performance before a different judge rather than vacating pleas, the latter of which is viewed as an extreme remedy appropriate in only extraordinary circumstances. *See United States v. Clark* (1st Cir. 1995), 55 F.3d 9, 14. *See also United States v. Nelson* (11th Cir. 1988), 837 F.2d 1519, 1525 (following what "*Santobello* teaches," and holding that specific performance was the appropriate remedy contrary to defendants' request for withdrawal of guilty plea). In reaching its holding, the Eleventh Circuit discussed the differing approaches to choice of remedy found in *Santobello* and acknowledged the "inherent

dangers in attempting to discern the holding of a majority opinion by extrapolating favorable language from a concurring or dissenting opinion." *Nelson*, 837 F.2d at 1525.

¶25 The Third Circuit, in contrast, has indicated that under certain circumstances a district court should not be able to impose rescission over the objections of a defendant who chooses specific performance subsequent to a prosecutor's breach of a plea agreement. *See United States v. Nolan-Cooper* (3d Cir. 1998), 155 F.3d 221, 241. *See also United States v. Gilchrist* (3d Cir. 1997), 130 F.3d 1131, 1136 (concluding that "[u]nless the court can, and is disposed to, impose the sentence agreed to by the parties in accordance with applicable statutes and guidelines, appellant should be afforded the opportunity to withdraw his plea and plead anew).

¶26 A review of state court decisions reveals that although the federal *Santobello* rule is perhaps a majority view, it is by no means the law of the land. *See*, *e.g.*, *State v. Potts* (Idaho Ct.App. 1999), 979 P.2d 1223, 1225 (choice of remedy is matter for court to decide); *accord*, *Dutton v. State* (Alaska Ct.App.1999), 970 P.2d 925, 928; *State v. King* (Iowa 1998), 576 N.W.2d 369, 371. *But see State v. Abbott* (Haw.Ct.App 1995), 901 P.2d 1296, 1298 ("considerable weight" should be given by the trial court to the defendant's choice of remedies, pursuant to reasoning expressed in Justice Douglas's concurrence); *accord*, *People v. Nixten* (Mich.Ct.App. 1990), 454 N.W.2d 160, 161; *and compare with State v. Shineman* (Wash.Ct.App. 1999), 971 P.2d 94, 97 (where the prosecutor attempts to avoid the plea agreement, the defendant is permitted to choose his remedy); *accord*, *State v. Bishop* (La.Ct.App. 1996), 686 So.2d 1053, 1055 (defendant should be afforded the option of choosing the remedy).

¶27 Thus, the three approaches to the question of choice of remedy identified in *Santobello* have each been expressed in state court decisions.

¶28 This Court has stated--perhaps somewhat rashly with the foregoing in mind--that "[t]he *law is clear* that the choice of remedy for a breach of a plea agreement is within the sound discretion of the trial court." *Persak*, 256 Mont. at 407, 847 P.2d at 281 (citing *United States v. Nelson* (11th Cir. 1988), 837 F.2d 1519, 1525, and *Santobello*) (emphasis added).

¶29 Four years later, however, in *State v. Bowley* (1997), 282 Mont. 298, 938 P.2d 592, this Court concluded that the State had breached a plea agreement, but we did not rely on the "clear" law expressed in *Persak*. Instead, this Court provided specific instructions--

albeit suggestive rather than absolute--to the District Court that upon remand the defendant could choose his remedy:

> First, should Bowley desire to do so, the District Court *should* allow him to withdraw his guilty plea. Alternatively, if on remand Bowley elects to be sentenced in accordance with the Pre-Trial Agreement, the District Court *should* do so.

*Bowley*, 282 Mont. at 312, 938 P.2d at 600 (emphasis added).

¶30 Similar to the defendant in *Bowley*, the defendant in *State v. Sanders*, 1999 MT 136, 294 Mont. 539, 982 P.2d 1015, requested that, on remand, he should be allowed to either withdraw his guilty plea or, alternatively, be sentenced in accordance with the plea agreement. *See Sanders*, ¶ 34. This Court approved of this request, and provided the same instructions as those that appeared in *Bowley*. *See Sanders*, ¶ 34.

¶31 Not long after we decided *Sanders* in 1999, however, we returned to the rule in *Persak*--without discussing either *Bowley* or *Sanders*--that the choice of remedy is within the "sound discretion of the trial court." *See Rardon*, ¶ 13 (citing *Persak*).

¶32 As the foregoing explication of our conflicting decisions indicates, this Court has by no means fully examined and exercised its Article VII, Section 2 jurisdiction in crafting an appropriate rule for "all other courts." *See* Art. VII, Sec. 2(2) and (3), Mont.Const. (Supreme Court has general supervisory control over all other courts; and, may make rules governing practice and procedure for all other courts). While the law cannot stand still, it must be stable; and, indeed, we must correct uncertainties as well as deformities within the law.[2] Not surprisingly, this Court is not alone in recognizing the need for reconciliation subsequent to the *Santobello* decision.

¶33 The Washington State Supreme Court visited a nearly identical conflict within its case law in 1988 when it decided *State v. Miller* (Wash. 1988), 756 P.2d 122. Washington case law, similar to Montana's, provided that it was the sentencing court's choice in one case, while it directed that a defendant's choice carried *controlling* weight in another case. *See Miller*, 756 P.2d at 125-26. After conducting a thorough review of its decisions, the Washington Court ultimately held that the "defendant's choice of remedy *controls*, unless there are compelling reasons not to allow that remedy." *See Miller*, 756 P.2d at 126-27 (holding that the prosecutor bears the burden of demonstrating that the defendant's choice of remedy is unjust).

¶34 We conclude the approach embraced by the Washington Court in *Miller* is the better reasoned of the three taken by the various state courts, in that it adheres to the underlying principles of contract law as well as the equitable nature of the available remedies. *See*, *e. g.*, *Jensen v. Sire* (1960), 137 Mont. 391, 395-96, 352 P.2d 263, 265; *Ottersen v. Rubick* (1990), 246 Mont. 93, 99, 803 P.2d 1066, 1070 (stating "well-established principle" of contract law that in the absence of a contractual provision expressly limiting the remedy or remedies available, a party may pursue any remedy which law or equity affords, as well as the remedy or remedies specified in the contract).

¶35 The case at bar illustrates our reasoning. Munoz is currently incarcerated pursuant to the five-year sentence issued by the District Court. He seeks rescission, not specific performance. Thus, to impose specific performance as his *only* remedy--against his wishes--could return him to precisely the circumstances that he, as the non-breaching party, now faces: serving a five-year prison sentence, which would be no remedy at all for the wrong incurred. *See*, *e.g.*, § 1-3-214, MCA (stating jurisprudential maxim that for every wrong there is a remedy).

¶36 In the alternative, Munoz (hypothetically) could have served three years of the five-year sentence and chosen specific performance--i.e., a recommendation of a three-year sentence by the State before a new sentencing judge--rather than risk the possible revival of previously dropped charges and a trial where an even greater sentence could be imposed. Again, the imposition of rescission against the wishes of the non-breaching defendant under those circumstances may result in placing the defendant, through no fault of his own, in a far worse position than if the State had performed under the plea agreement.

¶37 Further, the state has failed to present one compelling reason why this choice should not rest in the hands of the defendant. Rather, the State focusses squarely and repeatedly on its preferred scenario here, that specific performance is appropriate *because* the sentencing court is not bound by the State's recommendation--inferring that although the State concededly breached and may be ordered to "perform," Munoz should not be afforded any remedy. We view this particular posture as unpersuasive in light of the "fundamental rights" that are "flouted" by a prosecutor's breach of a plea bargain. *See Santobello*, 404 U.S. at 267, 92 S.Ct. at 501 (Douglas, J., concurring).

¶38 We conclude that, in light of the underlying principles of contract law, a non-breaching defendant must be afforded the initial right to choose from available remedies

where the State breaches a plea agreement. The State must therefore bear the substantial burden, as the breaching party, of demonstrating with clear and convincing evidence that the defendant's choice of remedy would result in a miscarriage of justice. Only upon such a showing may a district court, in its discretion, disallow a defendant's choice of remedy. To the limited extent that our prior decisions in *Persak* and *Rardon* conflict with our holding here today, we overrule those cases. We hold that upon remand, Munoz should be granted his chosen remedy of withdrawal of his guilty plea.

¶39 Accordingly, we reverse and remand for further proceedings consistent with this opinion.

/S/ JAMES C. NELSON

We Concur:

/S/ KARLA M. GRAY

/S/ PATRICIA COTTER

/S/ TERRY N. TRIEWEILER

/S/ JIM REGNIER

/S/ W. WILLIAM LEAPHART

/S/ JIM RICE

1. We say "generally" because there have been circumstances where federal courts have exercised their discretion to fashion a particular remedy in the interest of justice, and have diverged from a strict application of the two-remedy rule. *See*, *e.g.*, *Correale v. United States* (1st Cir. 1973), 479 F.2d 944, 950 (ordering remand for imposition of sentence of time served rather than resentencing before new judge where agreed-upon sentence had already elapsed); *Palermo v. Warden* (2d Cir. 1976), 545 F.2d 286, 297 (ordering release of defendant where promise of probation was unfulfilled and remand for withdrawal of guilty plea would have been "meaningless").

2. *See* Benjamin N. Cardozo, The Growth of the Law, at 2, 18 (1924).