No. 05-654

IN THE SUPREME COURT OF THE STATE OF MONTANA

2007 MT 64

IN THE MATTER OF H.C.R.,

    A Youth.

APPEAL FROM:    The District Court of the Twelfth Judicial District,
In and For the County of Hill, Cause DJ 2002-069,
Honorable John C. McKeon, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

    Jeremy S. Yellin, Attorney at Law, Havre, Montana

    For Respondent:

    Honorable Mike McGrath, Attorney General; Joslyn M. Hunt,
Assistant Attorney General, Helena, Montana

    Cyndee Peterson, County Attorney; Steve Gannon, Deputy
County Attorney, Havre, Montana

Submitted on Briefs:  November 1, 2006

Decided:  March 13, 2007

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1      H.C.R. appeals from the sentence imposed by the Twelfth Judicial District Youth Court, Hill County (Youth Court), sentencing H.C.R. to the custody of the Department of Corrections (DOC) until H.C.R. reaches the age of twenty-five, with the last three years suspended.  We reverse and remand with instructions.

¶2      H.C.R. raises the following issues on appeal:

¶3      1.      Did the State breach the sentencing stipulation, wherein it agreed to seek adult supervision for violations of sentence conditions by H.C.R., and the Youth Court err by imposing a sentence in violation of its previous order, which incorporated the sentencing stipulation?

¶4      2.      Did the Youth Court sentence H.C.R. illegally by imposing a sentence greater than the original sentence?

¶5      Because Issue 1 is dispositive, we do not address Issue 2.

### FACTUAL AND PROCEDURAL BACKGROUND

¶6      H.C.R., who is now nineteen years old, first became involved with the Youth Court at age fifteen, when H.C.R. was found to have committed various criminal offenses, including theft, criminal mischief, and ungovernable youth.  As a result, on February 7, 2003, H.C.R. was placed on probation until he reached the age of eighteen and was subsequently committed to the DOC for placement at Bear Paw Youth Guidance.  On December 17, 2003, the State petitioned to revoke H.C.R.'s probation, alleging that he had not followed treatment plans, was involved in thefts, and had committed assaults.  H.C.R. eventually admitted to these allegations and, in response, the

2

Youth Court again committed H.C.R. to the DOC for placement at Pine Hills Juvenile Correctional Center until he reached the age of eighteen. On May 21, 2004, the State once again petitioned to revoke H.C.R.'s suspended commitment, alleging he had committed the offense of disorderly conduct, tested positive for illegal drug use, and had not followed his treatment plan. The State amended its May 21, 2004, petition to include an alleged sexual assault by H.C.R.

¶7 H.C.R. admitted the allegations in the State's May 21, 2004, amended petition to revoke. In return for H.C.R.'s admissions, the parties agreed as follows:

> [T]he youth and the county attorney have stipulated that upon reaching the age of 18, the remainder of the youth's commitment will be suspended and the youth will be under the supervision of Juvenile Probation until his 21st birthday . . . . The parties further stipulated that if the youth violates any of those conditions, upon a finding of probable cause that the violation occurred, the parties will jointly petition the court, pursuant to § 41-5-208, MCA, to transfer this case to District Court and transfer his supervision to adult probation services.

In response to this stipulation, the Youth Court entered an order on June 24, 2004 (2004 Order), stating as follows:

> Pursuant to the parties' stipulation and good cause appearing, upon a finding of probable cause that the youth has violated any of these conditions, the parties shall jointly petition to have this matter transferred to District Court and adult supervision.

¶8 Eleven months later, on May 19, 2005, the State filed a "Petition to Transfer Supervision to Adult Probation and Parole," claiming that H.C.R. had not properly met the conditions of the 2004 Order based on his behavior at Pine Hills, and had exhausted the juvenile justice system while still posing a threat to public safety. In its petition, the State asserted that transfer to adult probation and parole was "necessary to ensure the

3

youth's continued compliance" with the 2004 Order. The Youth Court ordered a hearing on the State's petition for August 24, 2005. Both prior to and at the hearing, H.C.R. asserted that the State could not seek a custodial sentence as result of the sentencing stipulation which had been submitted and approved by the court in the 2004 Order. Despite the stipulation, the State nonetheless moved for a custodial sentence. The Youth Court found, by a preponderance of the evidence, that H.C.R. had violated the conditions of the 2004 Order. The Youth Court then concurred with the State's recommendation and sentenced H.C.R. to the DOC until he reached age twenty-five, with the last three years suspended. H.C.R. appeals.

## STANDARD OF REVIEW

¶9 A review of the record reveals the State and H.C.R. agreed that if H.C.R. were to violate any conditions of the 2004 Order, the Youth Court would transfer the case to district court "and transfer [H.C.R.'s] supervision to adult probation services." We view this sentencing stipulation as equivalent to a plea agreement in the criminal context.

¶10 We have held that a district court abuses its discretion when it fails to require the State to abide by the terms of a plea agreement. *State v. Rardon*, 1999 MT 220, ¶ 17, 296 Mont. 19, ¶ 17, 986 P.2d 424, ¶ 17 (*Rardon I*), *overruled in part on other grounds*, *State v. Munoz*, 2001 MT 85, ¶ 38, 305 Mont. 139, ¶ 38, 23 P.3d 922, ¶ 38. Where counsel for one party objects to the sentencing recommendation of the other party, we also review the district court's discretionary ruling under the abuse of discretion standard. *See State v. Rardon*, 2002 MT 345, ¶ 14, 313 Mont. 321, ¶ 14, 61 P.3d 132, ¶ 14 (*Rardon II*). Thus, because H.C.R. argued against the State's sentencing recommendation and asserted the

4

State could not make a recommendation outside of the 2004 Order, we review the Youth Court's decision here under the abuse of discretion standard of review.

**DISCUSSION**

¶11 *Did the State breach the sentencing stipulation, wherein it agreed to seek adult supervision for violations of sentence conditions by H.C.R., and the Youth Court err by imposing a sentence in violation of its previous order, which incorporated the sentencing stipulation?*

¶12 We have recognized that "a plea agreement presupposes fundamental fairness in the securing of the agreement between the defendant and the prosecutor . . . ." *Rardon I*, ¶ 14 (citing *State v. Schoonover*, 1999 MT 7, ¶ 12, 293 Mont. 54, ¶ 12, 973 P.2d 230, ¶ 12). Furthermore, "prosecutors—as well as—defendants are bound by the plea agreements they make." *Rardon I*, ¶ 14; *Schoonover*, ¶ 12 (citing *State v. Bowley*, 282 Mont. 298, 310, 938 P.2d 592, 599 (1997)). In stressing that prosecutors are also bound by the plea agreement, we have explained:

> This phase of the process of criminal justice, and the adjudicative element inherent in accepting a plea of guilty, must be attended by safeguards to insure the defendant what is reasonably due in the circumstances. Those circumstances will vary, but a constant factor is that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled. Prosecutors who engage in plea bargaining must meet strict and meticulous standards of both promise and performance as a plea of guilty resting in any significant degree on an unfulfilled plea bargain is involuntary and subject to vacation. Prosecutorial violations, even if made inadvertently or in good faith to obtain a just and mutually desired end, are unacceptable.

*Bowley*, 282 Mont. at 310-11, 938 P.2d at 599 (citations omitted).

¶13 In *Rardon I*, the State and defendant entered into a written plea agreement whereby in exchange for the defendant's guilty plea, the State agreed to recommend "a

5

sentence in conformity with whatever recommendation" was given by the Pre-Sentence Investigation (PSI) to be performed in the case prior to sentencing. *Rardon I*, ¶ 4. The officer who prepared the PSI report recommended the defendant receive a forty-year prison sentence, with twenty years suspended. *Rardon I*, ¶ 7. In contrast and despite the written plea agreement in place and the recommendation of the PSI officer, at the sentencing hearing, the State recommended the district court impose a seventy-year prison sentence with no eligibility for parole until the defendant obtained sex offender treatment, with a minimum of thirty years served. *Rardon I*, ¶ 8.

¶14 On appeal, the defendant argued the State breached the terms of the plea agreement when recommending a sentence different than what was contained in the PSI report. *Rardon I*, ¶ 15. We concluded that the State had a contractual promise to make a sentencing recommendation in conformity with the PSI report and that when the State recommended a sentence in excess of what was contained in the PSI, it breached the plea agreement. *Rardon I*, ¶ 17. We held that the district court had "abused its discretion when it failed to require the State to abide by the terms of the plea agreement." *Rardon I*, ¶ 17.

¶15 H.C.R. argues that the State breached the stipulation incorporated in the 2004 Order when it sought a custodial sentence rather than the adult probationary sentence it had agreed to. The 2004 Order obligated the State to petition the Youth Court, along with H.C.R., "to transfer this case to District Court and transfer his supervision to adult probation services." Because the State did not fulfill its obligations under the stipulation,

6

H.C.R. argues that he is entitled to be resentenced "with the requirement that the State follow and meticulously comply with its agreement."

¶16 The State does not address the issue of whether it breached the terms of the stipulation, but instead focuses on the Youth Court's authority to transfer H.C.R.'s case to district court and sentence H.C.R. as the court sees fit pursuant to § 41-5-208(5), MCA. Although the State correctly identifies the Youth Court's statutory authority, it fails to address the key issue here—that is, whether the State breached the agreement it entered into with H.C.R., as memorialized in the 2004 Order.

¶17 The State agreed to petition the Youth Court to transfer H.C.R.'s case to district court and to seek adult supervision in the event H.C.R. violated the conditions of his sentence. Thereafter, the State properly moved to transfer the case to district court, but, similar to *Rardon I*, the State failed to follow the terms of the sentencing stipulation when it sought a custodial sentence with the DOC, rather than adult supervision of H.C.R. As we have frequently stated, prosecutors as well as defendants are bound by the agreements they make with each other. *Rardon I*, ¶ 14; *Schoonover*, ¶ 12; *Bowley*, 282 Mont. at 310, 938 P.2d at 599. We conclude that the State did not honor the agreement it made and the failure to do so constitutes a breach of the sentencing stipulation.

¶18 Moreover, this matter progressed beyond an agreement entered by the parties. The parties also submitted the sentencing stipulation to the Youth Court, which approved the stipulation and incorporated it within the 2004 Order. Thus, upon re-sentencing following the subsequent revocation for violation of sentencing conditions, H.C.R. was

entitled to receive the sentence which the parties had presented to, and which was approved by, the Youth Court.

## CONCLUSION

¶19 We conclude that the Youth Court abused its discretion when it failed to require the State to abide by the terms of the sentencing stipulation, and erred by sentencing H.C.R. This matter is reversed and remanded to the Twelfth Judicial District Court, Hill County, with instructions that H.C.R. be resentenced in accordance with the terms of the sentencing stipulation as incorporated by the 2004 Order. So concluding, we need not address the second issue raised herein.

/S/ JIM RICE

We concur:

/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ PATRICIA COTTER
/S/ BRIAN MORRIS

8