FILED

November 19 2014

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 13-0512

DA 13-0512

IN THE SUPREME COURT OF THE STATE OF MONTANA

2014 MT 305

STATE OF MONTANA,

      Plaintiff and Appellee,

   v.

JUSTIN ALLEN CLEVELAND,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
                  In and For the County of Yellowstone, Cause No. DC 12-0664
                  Honorable Russell C. Fagg, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Kirsten H. Pabst, Attorney at Law; Missoula, Montana

      For Appellee:

          Timothy C. Fox, Montana Attorney General; Mardell Ployhar, Assistant
          Attorney General; Helena, Montana

          Scott Twito, Yellowstone County Attorney; Billings, Montana

Submitted on Briefs:  September 3, 2014
Decided:  November 19, 2014

Filed:

_____
                 Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1 Justin Allen Cleveland appeals the judgment of the Thirteenth Judicial District Court, Yellowstone County, sentencing him to a three-year suspended sentence, a fine, and participation in Adult Impaired Driving Court upon his guilty pleas to felony criminal endangerment, driving under the influence of alcohol, and operating a motor vehicle as a habitual traffic offender. We affirm.

¶2 The issues on appeal are as follows:

*1. Whether Cleveland's felony criminal endangerment charge qualified as an exception to the prior felony conviction rule, allowing him to receive a deferred sentence.*

*2. Whether Cleveland was entitled to specific performance of the original plea agreement that recommended a three-year deferred sentence, when he had a prior felony conviction that was not discovered until after the plea agreement was executed.*

## PROCEDURAL AND FACTUAL BACKGROUND

¶3 On October 25, 2012, Cleveland was observed driving erratically at 99 miles per hour in a 75-mile-per-hour zone. After being pulled over, Cleveland was found to be under the influence of alcohol. Cleveland's six-month-old child, O.C., was in the vehicle.

¶4 Cleveland was charged by information on November 2, 2012, with one felony count of criminal endangerment, and three misdemeanors: (1) driving under the influence of alcohol, (2) being a habitual traffic offender operating a motor vehicle, and (3) operating a motor vehicle with plates assigned to another vehicle.

¶5 On April 5, 2013, Cleveland signed an acknowledgement of waiver of rights and plea agreement, in which he pled guilty to the charges of criminal endangerment, driving under

2

the influence, and being a habitual traffic offender operating a motor vehicle. The State agreed to move to dismiss the charge of operating a motor vehicle with plates assigned to another vehicle. The plea agreement recommended a $500 fine, and a three-year deferred sentence on the condition that Cleveland complete the Adult Impaired Driving Court.

¶6 On June 4, 2013, the District Court held Cleveland's sentencing hearing at which the State presented a modification to Cleveland's recommended sentence because it discovered in his pre-sentence report that Cleveland had a prior felony which precluded him from receiving a deferred sentence under § 46-18-201(1)(b), MCA. Because of this discovery, the State recommended Cleveland receive a suspended sentence instead of a deferred sentence. Alternatively, the State agreed that Cleveland should have the opportunity to withdraw his guilty plea.

¶7 Cleveland argued that he was still eligible for a deferred sentence under an exception to the prior felony conviction rule, § 46-18-222(5), MCA, and that he was entitled to specific performance of the plea agreement. However, the District Court ruled that the exception to the prior felony conviction rule under § 46-18-222(5), MCA, did not apply to Cleveland's case. Having determined that Cleveland was not statutorily eligible for a deferred sentence under § 46-18-201(1)(b), MCA, the District Court refused to grant Cleveland specific performance of the plea agreement.

¶8 The District Court issued a sentencing order on July 10, 2013, in which it sentenced Cleveland to a three-year suspended sentence with credit for time served, a $500 fine, and participation in the Adult Impaired Driving Court on the charges of felony criminal

3

endangerment, driving under the influence of alcohol, and being a habitual traffic offender operating a motor vehicle.

¶9     Cleveland appeals the District Court's July 10, 2013 sentencing order.

## STANDARD OF REVIEW

¶10     This Court reviews a criminal sentence only for legality (i.e., whether the sentence is within the parameters provided by statute). *State v. Montoya*, 1999 MT 180, ¶ 15, 295 Mont. 288, 983 P.2d 937.

## DISCUSSION

¶11     *1. Whether Cleveland's felony criminal endangerment charge qualified as an exception to the prior felony conviction rule, allowing him to receive a deferred sentence.*

¶12     Section 46-18-201(1)(b), MCA, states: "Except as provided in 46-18-222, imposition of sentence in a felony case may not be deferred in the case of an offender who has been convicted of a felony on a prior occasion." Relevant to the present dispute is the exception set forth at § 46-18-222(5), MCA, which provides in pertinent part that a defendant qualifies for a subsequent deferred sentence "in a case in which the threat of bodily injury or actual infliction of bodily injury is an actual element of the crime, [but] no serious bodily injury was inflicted on the victim unless a weapon was used in the commission of the offense."

¶13     Cleveland argues that his crime should be included in the exception to the prior felony conviction rule because criminal endangerment is a crime in which the risk of bodily injury is an element, § 45-5-207, MCA, but no bodily injury actually occurs. Section 46-18-222(5), MCA. The State disagrees, arguing that this exception only applies to violent crimes involving the "threat" of bodily injury, § 46-18-222(5), MCA, whereas criminal

4

endangerment involves the "risk" of bodily injury pursuant to § 46-5-207, MCA. Essentially, the State argues that as used in these respective statutes, "threat" and "risk" are not synonymous. We agree.

¶14 Section 45-2-101(76)(a), MCA, defines "threat" as "a menace, however communicated, to . . . inflict physical harm on the person threatened or any other person or on property." By contrast, a "risk" is defined as "someone or something that creates or suggests a hazard." *Merriam-Webster's Collegiate Dictionary* 1076 (Frederick C. Mish ed., 11th ed. 2012). Plainly, a "threat" of bodily injury, § 46-18-222(5), MCA, is not synonymous with a "risk" of bodily injury as used in § 45-5-207, MCA. A threat involves an affirmative act in which the actor communicates a menace to inflict harm. Section 45-2-101(76)(a), MCA. As used in § 45-5-207, MCA, "risk" is the possibility of death or injury resulting from a hazard created by the defendant. Relevant to the present case, Cleveland obviously did not "threaten" to inflict harm upon his six-month-old child. He did, however, create a hazard from which harm to the child may have resulted by driving under the influence.

¶15 It may seem incongruous that arguably more serious offenses may qualify for an exception to the prior felony conviction rule under § 46-18-222(5), MCA, while criminal endangerment pursuant to § 45-5-207, MCA, does not. Nevertheless, Cleveland's offense clearly did not qualify for the recommended deferred sentence in the original plea agreement.

¶16 *2. Whether Cleveland was entitled to specific performance of the original plea agreement that recommended a three-year deferred sentence, when he had a prior felony conviction that was not discovered until after the plea agreement was executed.*

5

¶17 "Plea bargaining agreements are subject to contract law standards." *State v. Dinndorf*, 202 Mont. 308, 311, 658 P.2d 372, 373 (1983). In *State v. Allen* we noted:

> Prosecutors who engage in plea bargaining must meet strict and meticulous standards of both promise and performance as a plea of guilty resting in any significant degree on an unfulfilled plea bargain is involuntary and subject to vacation. Prosecutorial violations, even if made inadvertently or in good faith to obtain a just and mutually desired end, are unacceptable.

*State v. Allen*, 199 Mont. 204, 209, 645 P.2d 380, 382 (1981) (citations omitted).

¶18 A contract is unlawful if it is "contrary to an express provision of law." Section 28-2-701(1), MCA. If a contract has several distinct objects, and at least one object is lawful and one is unlawful, then "the contract is void as to the latter and valid as to the rest." Section 28-2-604, MCA.

¶19 As discussed above, Cleveland was not eligible for a deferred sentence because of his prior felony conviction. The State argues, therefore, that there was no breach of the plea agreement because the agreement was voided by the illegal provision—i.e., the deferred sentence, citing § 28-2-701, MCA, and § 28-2-603, MCA. Cleveland argues that the State should have allowed him to nevertheless choose between specific performance of the plea agreement or withdrawal of his guilty plea, relying on *State v. Munoz*, 2001 MT 85, 305 Mont. 139, 23 P.3d 922; and *State v. Rardon*, 2002 MT 345, 313 Mont. 321, 61 P.3d 132 (*Rardon II*).

¶20 In *Munoz*, the defendant pled guilty to one count of sexual assault, and entered a plea agreement for a three-year sentence. *Munoz*, ¶¶ 3-4. However, at the sentencing hearing the prosecution urged the District Court to adopt the probation officer's recommendation of a five-year sentence. *Munoz*, ¶ 5. The District Court sentenced him to five years, and ordered

6

that Munoz would be ineligible for parole until he completed every phase of the prison's sex offender treatment program. *Munoz*, ¶ 6. Munoz moved to withdraw his guilty plea because the State breached the plea agreement, but his motion was denied. *Munoz*, ¶¶ 7-8.

¶21 On appeal, we held that because the State breached the plea agreement, Munoz should have been allowed to choose from available remedies as the non-breaching party. *Munoz*, ¶¶ 10, 38. The burden then fell on the State, as the breaching party, to show by clear and convincing evidence that the defendant's choice of remedy would result in a miscarriage of justice. We therefore held that Munoz should have been given the option to withdraw his guilty plea. *Munoz*, ¶ 38. In *Rardon II*, we gave the defendant the option to withdraw his guilty plea or obtain specific performance of his plea agreement after the state breached the plea agreement. *Rardon II*, ¶ 26.

¶22 Cleveland's case is distinguishable from *Munoz* and *Rardon II* because the terms of Cleveland's plea agreement were illegal under § 46-18-201(1)(b), MCA, due to Cleveland's prior felony conviction which made him ineligible to receive a deferred sentence. Because that provision of the original plea agreement was illegal, the object of the plea agreement— the deferred sentence—was void and unenforceable. Sections 28-2-701, -604, MCA.

¶23 We reiterate that the State has an obligation to "meet strict and meticulous standards of both promise and performance" when engaged in plea bargaining and that "[p]rosecutorial violations, even if made inadvertently or in good faith to obtain a just and mutually desired end, are unacceptable." *Allen*, 199 Mont. at 209, 645 P.2d at 382. However, these obligations cannot include the enforcement of an illegal, and therefore unenforceable, provision. Therefore, Cleveland was not entitled to specific performance of the plea

7

agreement, and the State correctly gave him the option to either withdraw his guilty plea or agree to the suspended sentence in accordance with § 46-18-201(1)(b), MCA.

¶24    Affirmed.

/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ MICHAEL E WHEAT
/S/ BETH BAKER
/S/ JIM RICE

Justice Laurie McKinnon, specially concurring.

¶25    I agree with the Court's holding as to Issue 1.  With respect to Issue 2, however, it is unnecessary to invoke provisions of Title 28, pertaining generally to contracts, when we already have precedent clearly stating that there can be no plea bargain to an illegal sentence. *State v. Deserly*, 2008 MT 242, ¶ 16, 344 Mont. 468, 188 P.3d 1057, *overruled on other grounds by State v. Brinson*, 2009 MT 200, ¶ 9, 351 Mont. 136, 210 P.3d 164.  I would affirm the District Court on this basis and would not apply Title 28 statutes or *State v. Munoz*, 2001 MT 85, 305 Mont. 139, 23 P.3d 922, in resolving this issue.[1]

---

[1] The legality of the sentence was not at issue in *Munoz*.  The State had recommended a sentence different from what had been agreed upon in the plea agreement.  The State conceded breach of the plea agreement, and the issue concerned the proper remedy. *Munoz*, ¶¶ 3-11.

8

¶26    The notion that a plea agreement is a contract subject to contract law standards is well established in our caselaw.  Opinion, ¶ 17; *State v. Lewis*, 2012 MT 157, ¶ 16, 365 Mont. 431, 282 P.3d 679.  This principle can be traced back to *Santobello v. New York*, 404 U.S. 257, 92 S. Ct. 495 (1971).  There, the Supreme Court held that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled."  *Santobello*, 404 U.S. at 262, 92 S. Ct. at 499.  We acknowledged this holding in *State v. Allen*, 685 P.2d 333 (Mont. 1982) (*Allen II*), observing that it "was based *in part* on analogies to contract law." 685 P.2d at 335 (emphasis added).  We noted, however, that "there appears to be a recent trend away from a strict contract characterization of a plea bargain agreement." *Allen II*, 685 P.2d at 335 (citing *Cooper v. United States*, 594 F.2d 12 (4th Cir. 1979)).  In *Cooper*, for example, the court explained that plea bargaining implicates constitutional rights and, thus, there is a limit on the extent to which contract law may be relied on in this context.  *Cooper*, 594 F.2d at 15-18.  More recently, the Supreme Court stated that while "plea bargains are essentially contracts," this "analogy may not hold in all respects."  *Puckett v. United States*, 556 U.S. 129, 137, 129 S. Ct. 1423, 1430 (2009).

¶27    Since *Allen II*, and indeed *Santobello*, this Court and courts across the country have struggled with fitting the "broken plea bargain" into the context of contract law and defining the remedy to be allowed.  *E.g.*, *Munoz*, ¶¶ 12-38.  In my view, because a defendant's plea of guilty involves the waiver of various constitutional rights, a plea bargain is an agreement between the State and an individual having as its ultimate goal the advancement of *criminal justice*, rather than the commercial marketplace.  Contract principles, which undisputedly

9

derive from the free market and involve arm's length transactions in the business world, are inapt analogies of a defendant's relationship to the State. True, the analogy may provide context to the Supreme Court's struggle in *Santobello* to implant legal principles into "an essential component of the administration of justice"—i.e., plea bargaining. 404 U.S. at 260, 92 S. Ct. at 498. The constitutional underpinnings to the Supreme Court's decision, however, are beyond dispute. "[A] guilty plea is a serious and sobering occasion inasmuch as it constitutes a waiver of the fundamental rights to a jury trial, to confront one's accusers, to present witnesses in one's defense, to remain silent, and to be convicted by proof beyond all reasonable doubt." *Santobello*, 404 U.S. at 264, 92 S. Ct. at 500 (Douglas, J., concurring) (citations omitted). Use of contract law to define the rights and relationship between the State and the defendant ignores the fact that a conviction founded on an improperly induced guilty plea deprives the plea of its constitutionally required voluntariness. *Brinson*, ¶ 8.

¶28     I agree, therefore, with our prior observations that "prosecutors must meet strict and meticulous standards of both promise and performance relating to plea agreements, because a guilty plea resting on an unfulfilled promise in a plea bargain is involuntary and prosecutorial violations, even if made inadvertently or in good faith to obtain a just and mutually desired end, are unacceptable." *State v. Rardon*, 2002 MT 345, ¶ 18, 313 Mont. 321, 61 P.3d 132 (brackets and internal quotation marks omitted); *accord State v. LaMere*, 272 Mont. 355, 359, 900 P.2d 926, 929 (1995); *State v. Allen*, 197 Mont. 64, 69, 645 P.2d 380, 382 (1981) (*Allen I*).[2] However, addressing the enforceability of a plea agreement based on strict adherence to contract principles can be misleading and may cause us to lose

10

sight of the fundamental principle recognized in *Santobello*: that the defendant must be treated with fairness throughout the process. 404 U.S. at 261, 92 S. Ct. at 498.[3] I believe strongly that the law of contracts is inadequate to define the limits of a defendant's constitutional rights, and I find the use of contract principles to resolve the instant dispute inappropriate.

¶29    Indeed, as stated at the outset, resort to Title 28 and the principles of contract law discussed in *Munoz* is unnecessary. Cleveland's arguments for specific performance pertain to plea agreements contemplating lawful sentences where the prosecutor breached his obligations under the plea agreement, which is not the situation here. This case instead involves a plea bargain to an illegal sentence. Our precedent already recognizes that "'[t]here can be no plea bargain to an illegal sentence. Even when a defendant, prosecutor, and court agree on a sentence, the court cannot give the sentence effect if it is not authorized by law.'" *Deserly*, ¶ 16 (quoting *United States v. Greatwalker*, 285 F.3d 727, 729-30 (8th Cir. 2002)). "'[A] plea agreement calling for an unauthorized sentence cannot be specifically enforced.'" *Deserly*, ¶ 16 (quoting *State v. Brown*, 606 N.W.2d 670, 674 (Minn. 2000)). Furthermore, because a guilty plea cannot be induced by unfulfillable promises, the voluntariness of the plea is drawn into question where the plea agreement contemplates a

---

[2] *Allen I* is also reported at 199 Mont. 204, 209.

[3] *See also Cooper*, 594 F.2d at 15-16 ("Both before and since *Santobello*, the courts have understandably drawn heavily on the ready analogies of substantive and remedial contract law to supply the body of doctrine necessary to order plea bargaining practices and to afford relief to defendants aggrieved in the negotiating process. To the extent therefore that there has evolved any general body of 'plea bargain law,' it is heavily freighted with these contract law analogies. When *Santobello* made it plain, however, that the core concept here is the existence of a constitutional right in the defendant to be treated with 'fairness' throughout the process, this presaged inevitably the

11

sentence unauthorized by law. *Deserly*, ¶ 16. If a plea bargain is based on a promise that the trial court lacks authority to fulfill, and the defendant was induced to plead guilty by that promise, then the defendant is entitled to withdraw the plea and the parties are returned to their initial positions. *Deserly*, ¶ 16.

¶30 Given our adoption in *Deserly* of the foregoing well-recognized principles, it is not necessary, or advisable, to apply Title 28 statutes in resolving the instant appeal. The presentence investigation revealed that Cleveland has a prior felony conviction. Thus, upon learning that the sentence contemplated by the parties in the plea agreement is illegal, the District Court gave Cleveland the option of withdrawing his guilty plea at the June 4, 2013 sentencing hearing (a critical fact that we have failed to mention in our Opinion). The District Court advised Cleveland that if he chose not to withdraw his guilty plea, the court would impose a suspended sentence rather than a deferred sentence. Cleveland, after being properly advised, stated: "[N]o, I wouldn't withdraw my guilty plea, because obviously, I did the crime. So there's no point in dragging that out any longer." Cleveland instead chose to insist on specific performance of the plea agreement, which the District Court correctly determined was not an option.

¶31 I would affirm the District Court based on the rationale that there can be no plea bargain to an illegal sentence, *Deserly*, ¶ 16, and that Cleveland declined to withdraw his plea when given the opportunity to do so. I therefore specially concur as to Issue 2.

---

question of the extent to which contract law may be drawn upon to define the limits of this constitutional right." (footnote omitted)).

12

/S/ LAURIE McKINNON